JOSEPH BEESLEY v. F. W. WHEELER & COMPANY.

*Master and servant—Negligence—Fellow-servants—Defective scaffold.*

1. Plaintiff was employed by the defendant corporation, a builder of steel vessels, to go over the work, and supply omitted rivets, after the riveters of the plates of the vessel had completed their work. Artisans of various kinds were employed to do their respective shares of the work. The building of stagings, the erection of derricks, and the raising of materials were parts of the necessary work, incident to and simultaneous with, and in fact a part of, the building of the vessel. All was under the charge of one superintendent, who directed the different gangs through their respective foremen. Plaintiff, while working upon a scaffold, was injured by the breaking of a weak cross-piece, selected and used by the carpenters who built the scaffold. In a suit to recover damages for the injury, there was nothing to indicate a contract on the part of the defendant to provide a safe scaffold to work upon, or an assumption by it of that duty. And it is held that plaintiff and the carpenters who built the scaffold were fellow-servants in such a sense as to prevent the application of the rule that it is the duty of the master to provide a reasonably safe place for the servant to work.

2. This holding does no violence to the rule of safe place. The case is different from those where the master furnishes a permanent place in which to work, as in a ship or factory. A master's duty in such a case is to make and keep the place reasonably safe; but that rule would apply as to those working in, but not necessarily as to those constructing, the factory.

3. The following propositions are summarized from the opinion of Mr. Justice HOOKER:

　　*a*—The doctrine which relieves the master from liability for injuries caused by the negligence of fellow-servants is of wide application. It originated in cases where servants were engaged in a common enterprise, wherein, by reason of the negligence of one, another was injured. It modified the doctrine that the principal is liable for the negligent acts of his agent, upon the theory that the servant assumed the ordinary dangers incident to the employment, and that "an obligation on the part of the master to take more care of the servant

than he may reasonably be expected to take of himself will not be implied."

b—The rule laid down in *Farwell v. Railroad Corporation*, 4 Metc. 49, 58,—that where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall.perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity, or neglect of duty, and leave the service if the common employer will not take such precautions, and employ such agents, as the safety of the whole party may require; that by these means the safety of each will be much more effectually secured than could be done by a resort to the common employer for indemnity in case of loss by the negligence of each other; that, regarding it in this light, it is the ordinary case of one sustaining an injury in the course of his own employment, in which he must bear the loss himself, or seek his remedy, if he have any, against the actual wrong-doer,—is of such general application that the citation- of authorities to support it is unnecessary, although much difficulty has been found in discovering a true test of its application, and the decisions are consequently somewhat inharmonious.

c—The rule that the master is bound to provide his servant with reasonably safe machinery, and a proper and reasonably safe place in which to work, has sometimes been invoked or overlooked when perhaps it should not have been, and the two rules, running parallel and in close proximity, have led to improper applications of both.

d—There are some courts which have held that, in order to constitute servants of the same master fellow-servants, it is not enough that they are engaged in doing parts of some work not requiring co-operation, nor bringing the servants together or into such personal relations that they can exercise an influence, one upon the other, promotive of proper precaution in respect to their mutual safety. This doctrine finds its favorite fields where large enterprises result in systematic divisions of labor. But it is not the prevailing doctrine, as will be seen from an investigation of cases from most of the states, including Michigan; and it can be maintained only by overthrowing the rule that the implied contract of the master ends with indemnity against his own negligence, and does not extend to that of co-employés engaged in the same enterprise.

e—Another attack upon the rule is made by the superior servant, as contradistinguished from the *alter ego*, or vice-principal, limitation. The courts of Illinois, Tennessee, Vir-

ginia, Kentucky, and Georgia have adopted the superior serv-
ant rule.   Similar cases can be found in Ohio, North Carolina,
West Virginia, Kansas, Nebraska, Missouri, and in the federal
courts.   On the contrary, New York, Maine, Pennsylvania,
Massachusetts, Maryland, Indiana, Michigan, Minnesota, Cali-
fornia, and Texas have repudiated the doctrine.

f—The cases upholding the limitations of the rule in these
particulars (d and e) are frequently cited in accident cases,
and in hard or doubtful ones may sometimes lead to departures
from the true rule, by reason of which greater or less obscurity
inevitably follows, and no end of trouble from the consequences,
where they are irreconcilable with the other rule.

g—It must not be assumed that there is no limitation to the
doctrine of immunity on the part of the master.   The law
clearly imposes duties upon him from the discharge of which
he cannot shelter himself by the interposition of an agent or
servant, or the fellow-servant rule.   He may assume liability
for accidents suffered by his servant in the course of his em-
ployment, either expressly or by implication, where it is plain
that it was the intention of both parties that he should do so,
or where he is personally present, directing the negligent act.
Again, where the rule that he must provide a reasonably safe
place and machinery applies, the responsibility is his.   In all
of these cases he is held liable, because the negligence is *his*.

h—As said by a text writer (McKinney, Fellow-Servants,
§ 23) "the true test whether an employé occupies the position
of a fellow-servant to another employé, or is the representa-
tive of the master, is to be found, not from the grade or rank
of the offending or injured servant, but it is to be determined
by the character of the act being performed by the offending
servant, by which another employé is injured; or, in other
words, whether the person whose *status* is in question is
charged with the performance of a duty which properly be-
longs to the master."   It would seem that this must be the
governing principle, unless the limitations hereinbefore dis-
cussed are adopted, which, as stated, is not the case in this
State.

i—This discussion of the superior servant question must not
be considered as necessarily involving that of *alter ego*.   If
the liability of the master is in all cases to depend upon the
rule above mentioned, it matters little whether the offender is
called "*alter ego*" or "servant."   It is only when the act is
one which does not fall within a duty that the law imposes
upon the master, or which he has taken upon himself, that it
becomes important.   In such cases the term is found an appro-
priate one, where it is sought to invoke the doctrine of *re-*

*spondeat superior.* How far the courts have gone in holding that a master is liable for such acts, committed by a person in full charge of his business, it is unnecessary to investigate in this case, and no opinion is expressed upon the question.

*j*—Having, then, determined the rule, it must be the guide in all cases, and if, in some instances, doubts shall have arisen, which in the minds of some have led to greater or less departures from it, the rule, and not such cases, must be the magnetic pole towards which future adjudications must point, and discrepancies, if any exist, must be ascribed to differences of opinion in regard to the *application* of the rule, which all recognize.

Error to Bay.   (Cobb, J.)   Argued February 2, 1894. Decided December 22, 1894.

Negligence case.   Defendant brings error.   Reversed, and no new trial ordered.   The facts are stated in the opinion.

*Moore & Moore* and *McDonell & Hall,* for appellant.

*Shepard & Lyon,* for plaintiff.

HOOKER, J.   The defendant is engaged in building steel vessels, in the construction of which scaffolds are necessary at various stages of the work.   It employs about 800 men, of various trades, including fitters, bolters, chippers, drillers, riveters, searchers, and carpenters.   These men are continuously employed, and all are subject to the control of the superintendent.   The labor is divided among the artisans, and to the carpenters is apportioned the building of scaffolds, though they are sometimes assisted by others.   The plaintiff, a searcher,—*i. e.,* one who goes over the work, and supplies omitted rivets, after the riveters of the plates of the vessel are through,—was injured by the breaking of a weak putlog, selected and used by the carpenters who built the scaffold; and his right to recover hinges upon the question of whether or not he and the carpenters were fellow-servants in such a

sense as to prevent the application of the rule that it was
the duty of the master to provide a reasonably safe place
for the plaintiff to work.

The doctrine which relieves the master from liability for
injuries caused by the negligence of fellow-servants is of
wide application. It originated in cases where servants
were engaged in a common enterprise, wherein, by reason
of the negligence of one, another was hurt. It modified
the doctrine that the principal is liable for the negligent
acts of his agent, upon the theory that the servant assumed
the ordinary dangers incident to the employment, and
that "an obligation on the part of the master to take
more care of the servant than he may reasonably be
expected to take of himself will not be implied."

Chief Justice Shaw, in the case of *Farwell v. Railroad
Corporation,* 4 Metc. 49, 58, after discussing the liability
of common carriers to their patrons, says:

"They are held to the strictest responsibility for care,
vigilance, and skill on the part of themselves and all
persons employed by them, and they are paid accordingly.
*The rule is founded on the expediency of throwing the risk
upon those who can best guard against it.*"

He continues:

"We are of opinion that these considerations apply
strongly to the case in question. Where several persons
are employed in the conduct of one common enterprise or
undertaking, and the safety of each depends much on the
care and skill with which each other shall perform his
appropriate duty, each is an observer of the conduct of
the others, can give notice of any misconduct, incapacity,
or neglect of duty, and leave the service if the common
employer will not take such precautions, and employ such
agents, as the safety of the whole party may require. By
these means the safety of each will be much more effectu-
ally secured than could be done by a resort to the com-
mon employer for indemnity in case of loss by the negli-
gence of each other. Regarding it in this light, it is the
ordinary case of one sustaining an injury in the course of

his own employment, in which he must bear the loss himself, or seek his remedy, if he have any, against the actual wrong-doer."

This rule is of such general application that the citation of authorities to support it is unnecessary. Much difficulty has been found in discovering a true test of its application, and the decisions are consequently somewhat inharmonious. The rule that the master is bound to provide his servant with reasonably safe machinery, and a proper and reasonably safe place to work, has sometimes been invoked or overlooked when perhaps it should not have been, and the two rules, running parallel in close proximity, have led to improper applications of both.

There are some courts which have held that, in order to constitute servants of the same master fellow-servants, it is not enough that they were engaged in doing parts of some work not requiring co-operation, nor bringing the servants together or into such personal relations that they could have exercised an influence, one upon the other, promotive of proper precaution in respect to their mutual safety. This doctrine finds its favorite fields where large enterprises result in systematic division of labor. Several of the states recognize it, and adjudicated cases from Illinois, Tennessee, Virginia, Kentucky, and Georgia should perhaps be read in the light of this limitation of the general rule. But it is not the prevailing doctrine, as will be seen from an investigation of cases from most of the states, including our own; and it can be maintained only by overthrowing the rule that the implied contract of the master ends with indemnity against his own negligence, and does not extend to that of co-employés engaged in the same enterprise. For a discussion of the subject, see *Farwell v. Railroad Corporation*, 4 Metc. 49; *Brodeur v. Valley Falls Co.*, 16 R. I. 448. See, also, *Hoar v. Merritt*, 62 Mich. 386; *Quincy Mining Co. v. Kitts*, 42 Id. 34; *Dewey*

*v. Parke, Davis & Co.,* 76 Id. 631; *Baron v. Navigation Co.,* 91 Id. 585.

Another attack upon the rule is made by the superior servant, as contradistinguished from the *alter ego,* or vice-principal, limitation. As might be expected from their adherence to the "division of labor doctrine," hereinbefore mentioned, the courts of Illinois, Tennessee, Virginia, Kentucky, and Georgia have adopted the "superior servant" rule. Similar cases can also be found in Ohio, North Carolina, West Virginia, Kansas, Nebraska, Missouri, and in the federal courts. On the contrary, New York, Maine, Pennsylvania, Massachusetts, Maryland, Indiana, Michigan, Minnesota, California, and Texas have repudiated the doctrine. The English courts also refuse to adopt it. These decisions hold that this doctrine ignores the true criterion of fellow-service.

The cases upholding the limitations of the rule in these particulars are frequently cited in accident cases, and in hard or doubtful ones may sometimes lead to departures from the true rule. Greater or less obscurity inevitably follows, and no end of trouble from the consequences, where they are irreconcilable with the other rule.

It must not be assumed that there is no limitation to the doctrine of immunity on the part of the master. The law clearly imposes duties upon the master from the discharge of which he cannot shelter himself by the interposition of an agent or servant, or the "fellow-servant" rule. He may assume liability for accidents suffered by his servant in the course of his employment, either expressly or by implication, where it is plain that it was the intention of both parties that he should, or where he is personally present, directing the negligent act. Again, where the rule that he must provide a reasonably safe place and machinery applies, the responsibility is his. In

all of these cases he is held liable, because the negligence
is *his*. As said by a text writer:

"The true test, it is believed, whether an employé occu-
pies the position of a fellow-servant to another employé,
or is the representative of the master, is to be found, not
from the grade or rank of the offending or injured serv-
ant, but it is to be determined by the character of the
act being performed by the offending servant, by which
another employé is injured; or, in other words, whether
the person whose *status* is in question is charged with the
performance of a duty which properly belongs to the
master." McKin. Fel. Serv. § 23; *Flike v. Railroad Co.*,
53 N. Y. 549; *Crispin v. Babbitt*, 81 Id. 516; *Ford v.
Railroad Co.*, 110 Mass. 240; *Anderson v. Bennett*, 16
Or. 515.

It would seem that this must be the governing prin-
ciple, unless the limitations hereinbefore discussed are
adopted, which, as stated, is not the case in this State.

This discussion of the "superior servant" question must
not be considered as necessarily involving that of "*alter
ego*." If the liability of the master is in all cases to
depend upon the rule above mentioned, it matters little
whether the offender is called "*alter ego*" or "servant."
It is only when the act is one which does not fall within
a duty *that the law imposes upon the master, or which he
has taken upon himself*, that it becomes important. In
such cases the term is found an appropriate one, when it
is sought to invoke the doctrine of *respondeat superior*.
How far the courts have gone in holding that a master
is liable for such acts, committed by a person in full
charge of his business, we find it unnecessary to investigate
in this case, and express no opinion upon the question.

Having, then, determined the rule, it must be the guide
in all cases, and if, in some instances, doubts shall have
arisen, which in the minds of some have led to greater or
less departures from it, the rule, and not such cases,
must be the magnetic pole towards which future adjudica-

tion must point, and discrepancies, if any exist, must be ascribed to differences of opinion in regard to the application of the rule, which all recognize.

As to the matter of application, each case necessarily rests upon its own facts.   Scaffold cases have not been numerous, and the application of the rule has not been uniform.   Indeed, we could hardly expect it, in view of the limitations mentioned by the courts of some states. We may properly eliminate all scaffold cases arising in the states mentioned as adhering to the "division of labor" rule.

The case of *Scott v. Craig*, 34 Sc. Jur. 401, went off on the proposition that, as the master personally superintended the work, the negligence was his own.

In New York, the cases of *Manning v. Hogan*, 78 N. Y. 615, and *Green v. Banta*, 48 Super. Ct. 156, may seem to support plaintiff's contention.   In the former, decided in 1879, the plaintiff's intestate was killed by the falling of a scaffold erected for the purpose of doing the plaster work on a public building in Central Park.   One Mahoney was the contractor with the city, and, before the work was begun, he executed an assignment to the defendant, Hogan, of all moneys due or to grow due by virtue of the contract, and Hogan was obliged to carry out the contract to protect himself.   The deceased was at work on the scaffold at the time of the accident.   It was proved that he had applied for work, and his name was on the pay roll for that half day.   There was also evidence that it was a particular branch of mechanical occupation to put up such scaffolds; that the persons employed to build were not of that occupation; and that it was built of insufficient material, both in quality and quantity.   Held, "that the question of negligence in building the scaffold was for the jury; that it was not sufficient that there was enough of suitable material provided to build the scaffold.

It needed that there should be skill and judgment in the use thereof." This was a memorandum case, which was not reported in full, and we have not the benefit of the discussion of these questions by the court, if there was any; but enough appears to indicate that no violence is done to the general rule. The case appears to have turned upon the failure of the master to employ competent fellow-servants, which is one of his duties, to the extent of using reasonable care in the selection. See a criticism of this case in *Peschel v. Railway Co.*, 62 Wis. 361. Again, it is possible that the scaffold was erected by Mahoney, under his contract, before Hogan took charge of the work, in which case the scaffold builders and the deceased, who was shown to have worked but one half day, were not servants of the same master, and therefore were not fellow-servants, within the rule.

The case of *Green v. Banta, supra,* is from an inferior court, and cannot be said to settle the rule for New York. The plaintiff was a hod carrier, engaged with others in dumping brick upon a scaffold. Defendant, Banta, was a contractor, and the case says *that it was his duty to furnish a properly built scaffold.* In the performance of this duty he employed a foreman. The court said:

"Therefore, any negligence of the foreman would be the negligence of the defendant, and not the negligence of a fellow-workman; and the same proposition would be true as to any workman, not called a foreman, who was directed by the master to build the scaffold."

The court adds:

"If, after the scaffold be built, the foreman use the scaffold with the workman afterwards injured, and the injury ensues from the negligence of the foreman, they hold the relation of 'fellow-workmen,' so called, and the master is not responsible."

The decision is based upon *Crispin v. Babbitt, supra,* which holds that the liability of the master does not

depend on the grade or rank of the negligent employé, but upon the character of the act; and that, if the act is one pertaining to the duty which the master owes to his servants, he is responsible, but, if the act is one pertaining only to the duty of an operative, such operative, whatever his rank or title, is a fellow-servant, and the master is not liable. For the latter part of the proposition of the court, the case of *Slater v. Jewett*, 85 N. Y. 61, is cited. Whatever we may think of its application, this case of *Green v. Banta* recognizes the rule, and at most bears upon the question whether an employer owed a duty, under the facts in that case, to furnish a safe scaffold. *It asserts such duty*, but it leaves us to conjecture whether such duty arose by express contract, by necessary implication from the peculiar facts, or upon the broad ground that a scaffold builder and a plasterer are under no circumstances fellow-servants.

The case of *Hogan v. Field*, 44 Hun, 72, was where a bridge riveter was injured by the fall of a scaffold. It was not the business of Hogan to build the staging, but, under the direction of the person in charge of the work, he, with others, undertook it. It was held that the negligence of such persons was that of fellow-servants, and he was not permitted to recover.

These cases do not, therefore, weaken, but strengthen, the rule mentioned as the criterion, and it does not clearly appear that such rule has been misapplied.

We will next consider the rule in Massachusetts, selecting only scaffold cases. In *Mulchey v. Society*, 125 Mass. 487, a verdict for the plaintiff was sustained because the society expressly contracted to build and remove stagings for decorators.

In *Arkerson v. Dennison*, 117 Mass. 407, the plaintiff, who was at work repairing a building, went upon a staging by defendant's direction. The staging was insecure by

reason of its construction of unsuitable materials, or by neglect to securely fasten it. The staging was built before plaintiff's employment, by men who were afterwards his fellow-workmen, and the defendant directed what lumber should be used. The staging was not built under the direct personal supervision of defendant, but there was evidence that he superintended the work generally. It was held a proper question for the jury, the case apparently turning upon the proposition that, —

"When the preparation of the appliances is neither intrusted to nor assumed by them [the employés], the master may be held guilty of negligence if defective appliances are furnished, even though the workmen themselves are employed in the preparation of them. In such case, negligence appearing, it is a question of fact for the jury whether that negligence was in respect of what was done or undertaken by the fellow-workmen, or was the negligence of the master."

There may be differences of opinion as to whether this case overstepped the rule or not, but that it was not so intended is inferable from the cases of *Zeigler v. Day*, 123 Mass. 152; *Colton v. Richards*, 123 Id. 484; and *Killea v. Faxon*, 125 Id. 485, — two of which were scaffold cases. The last-mentioned case states the difficulty in these cases as follows:

"On the one hand is the familiar rule that one who enters the service of another takes upon himself the risks incident to the employment, including the risk of the negligence of fellow-servants employed in the same service. On the other hand is the equally well-settled rule that, if a master undertakes to furnish structures or instruments with which the servant is to work, the master is bound to use due care in providing them, and he is responsible if, through his negligence, or the negligence of other servants employed to furnish them, they are unsuitable."

The court add:

"We are of opinion that this case falls within the first rule. There was no evidence which would justify the jury

in finding that either of the defendants undertook to furnish a staging for the plaintiff, or to assume the risk of its safety. It was like the ordinary case where a man, in building or repairing a house, employs various servants in different departments of labor. Neither of the defendants retained any charge or direction of the work of putting up the staging, but intrusted it to Higgins. He and the plaintiff were fellow-servants, employed in the same service, and each took the risk of the negligence of the other."

It should be remarked that Higgins was a carpenter employed by the defendant to superintend the whole job. Plaintiff was a coppersmith hired by defendant to put up gutters upon the roof.

In Minnesota is a late case, viz., *Sims v. Steel-Barge Co.*, 56 Minn. 68, which is supposed to be nearly upon all fours with the present case; but it differs in this particular: that the building of scaffolds was intrusted to one Guinane and his crew, employed to build stagings, *and to do nothing else.* This may or may not have been considered an important reason for reaching the result in that case. To us it does not seem to be so, unless by way of an implication of an undertaking to furnish stagings for employés, and at best we think it is bordering upon the division of labor rule, which we understand that Minnesota does not in terms indorse. For other cases sustaining the claim that the master is *not* liable in staging cases, see *Peschel v. Railway Co.*, 62 Wis. 338; *Benn v. Null*, 65 Iowa, 407.

It remains to look at the case from the standpoint of Michigan authorities. The doctrine of "fellow-servant" has been so frequently discussed that it will not be necessary to elaborate some branches of the question. The cases show that the rule of *Priestley v. Fowler*, 3 Mees & W. 1, exists, and that there has been no express recognition of the limitations as to "division of labor" or "superior servant." Michigan, as already stated, adheres to the

rule that the master's liability depends upon the nature of the duty and the character of the contract; and, if this Court has ever departed from the rule, it is only in its application, and about that minds may differ. The attack upon the general rule has usually been made, in this State, in the guise of a claim that the master was required to furnish a safe place or safe machinery. In *Van Dusen v. Letellier,* 78 Mich. 492, an employé was injured by the collapse of a dock, the supports to which became rotten, and gave way. Plaintiff was a laborer piling lumber. The owners lived in another county, and had a superintendent, who looked after the business in a general way, and who hired competent men to inspect the dock before the lumber was piled. The Court held that—

"The duty of inspection, when required by the circumstances of the case, cannot be delegated by the master in such manner as to avoid responsibility."

The doctrine that it was the duty of the master to provide a safe place was applied, and upon this the case was decided.

In *Dewey v. Railway Co.,* 97 Mich. 330, the question of a safe place was again discussed, and the Court refused to apply the doctrine to a case where an inspector permitted a car improperly loaded with lumber to be made a part of a train, whereby plaintiff was injured; holding that the inspector and plaintiff were servants of the same master, engaged in the same service, viz., running its train. The case contains a valuable discussion of these principles.

In the cases of *Miller v. Railway Co.,* 90 Mich. 230, and *La Pierre v. Railway Co.,* 99 Id. 212, unsuccessful attempts were made to assert the doctrine of a "safe place" where the fault was clearly that of a fellow-servant. In none of these Michigan cases cited was a scaffold involved.

In *Hoar v. Merritt*, 62 Mich. 386, the injury was occasioned by the fall of a scaffold. A dwelling was erected by the defendant, who hired a superintendent by the month, who had general charge under defendant's direction, hiring all the men but the painters, who were hired by the defendant personally. The scaffold was erected, by direction of the superintendent, for the building of the cornice. After this was done, the painters used the scaffold, and plaintiff was hurt. Defendant furnished suitable material and competent workmen to build the scaffold, and the Court held that they were fellow-servants, and that the risk was incident to plaintiff's employment, which he assumed when he entered the master's service.

The cases of *Brown v. Gilchrist*, 80 Mich. 56; *Harrison v. Railroad Co.*, 79 Id. 409; and *Hunn v. Railroad Co.*, 78 Id. 513,—are cases where the negligence was that of a superior, for which, under the facts in those cases, the master was held liable. Some may think them innovations upon the doctrine that the grade of the servant is immaterial; but before reaching such conclusion we should examine the nature of the duty in the performance of which the injury occurred. At all events they seem to have raised different questions from that involved in this case. Here the defendant was engaged in the enterprise of building a ship. Artisans of various kinds were employed to do their respective shares of the work. The building of stagings, the erection of derricks, and the raising of materials were parts of the necessary work, incident to and simultaneous with, and in fact a part of, the building of the ship. Stagings were for temporary use, and indispensable. All was under the charge of one superintendent, who directed the different gangs through their respective foremen. There is nothing to indicate a contract to provide a safe scaffold to work upon, or an

assumption of that duty by the master, and the case seems to be clearly within the rule of *Killea v. Faxon,* which it closely resembles, and of *Hoar v. Merritt.* The duty was one which was left to those engaged in the construction of the ship.

It is believed that this does no violence to the rule of safe place. The case is different from those where the master furnishes a permanent place to work, as in a ship or factory. A master's duty in such a case is to make and keep the place reasonably safe; but that rule would apply as to those working in, but not necessarily as to those constructing, the factory. Such employés would not be fellow-servants with each other, for the enterprises would not be the same. The service of one would be the erection of the completed factory; that of the other its use for the purpose for which it was designed. But here the scaffold builder and the riveter are engaged in the common service of building a ship. The work of both goes along together, and it seems to us that the case is clearly within the rule of *Priestley v. Fowler,* and kindred cases.

The court should have directed a verdict for the defendant.

Judgment reversed, and no new trial ordered.

LONG and GRANT, JJ., concurred with HOOKER, J.

MONTGOMERY, J. The rule that it is the duty of the master to furnish a safe place for the servant to work is so universal and so thoroughly settled that no citation of authorities is necessary to sustain it. It is also settled in this State that this duty is one which cannot be delegated by the master so that the employé engaged to do the work of making the premises safe is to be treated as a fellow-servant of those who are employed and engaged in the general work for which the premises are intended. *Van Dusen v. Letellier,* 78 Mich. 492; *Brown v. Gilchrist,* 80

Id. 56; *Roux v. Lumber Co.*, 94 Id. 607; *Morton v. Railroad Co.*, 81 Id. 423. On the other hand, I think it is equally clear that where the danger or injury results from the operation, and the negligence is that of one who is engaged in the common employment, it cannot in any proper sense be said to be attributable to a fault in providing a safe place to work, or safe machinery or appliances. See *Dewey v. Railway Co.*, 97 Mich. 329, 345.

The question remains whether the construction of the scaffold, the defect in which caused the injury in this case, was a part of the work in which the plaintiff was, in common with others, engaged, or was in the line of the performance of the duty of the master to supply a safe place to work. I think this question is ruled by *Hoar v. Merritt*, 62 Mich. 386.

In *Butler v. Townsend*, 126 N. Y. at page 110, Finch, J., in treating of this question in a case analogous to the present one, said:

"It was a mistake to assume, as the duty violated, that of providing a safe place for the work of the servants. The staging was not, in the sense of the rule, the place in which the work was to be done, but an appliance or instrumentality by means of or through the aid of which the calkers were to do their work. The distinction is sometimes very important, for a place, in its broad sense, is never safe in which an accident happens, and an accident always happens in some place, and so the master might almost become an insurer. Properly enough, an existing mine, or a railroad track crossing a cattle guard, or the rooms in a factory, have been deemed 'places' for work which the master was bound to make safe by the exercise of reasonable care; but a platform upon which the servant was directed to stand we have treated, not as a place, but as an instrument or appliance of his work."

See, also, as supporting the doctrine of *Hoar v. Merritt, Killea v. Faxon*, 125 Mass. 485, and *Peschel v. Railway Co.*, 62 Wis. 338.

I concur in the conclusion reached by Mr. Justice HOOKER.

MCGRATH, C. J., concurred with MONTGOMERY, J.