PETAJA *v.* AURORA IRON MINING CO.

MASTER AND SERVANT—INJURY TO LABORER IN MINE—DOCTRINE OF "SAFE PLACE"—FELLOW-SERVANTS.

Plaintiff was employed in defendant's mine at loading upon cars and removing the ore as it was brought to the floor by the miners. As fast as the ore was removed, it was the practice to support the roof by a system of timbering, largely temporary in character, which was put in place by a force of men kept for that purpose, upon notification by the miners themselves or by the shift boss, who had charge of the work in the mine, subject to the general supervision of a mining captain. Before a newly-opened space had been timbered, and before the timber men had been notified that their services were required, plaintiff was injured by a fall of ore from the roof. Shortly before the accident, the attention of the shift boss had been directed to indications of danger, but he said that the roof was all right, and instructed the men to resume work. *Held:*

(1) That, whether the injury was caused by excavating too large a space without placing the timbers, or whether it resulted from the fact that the timbering previously erected had ceased to support the roof by reason of the subsequent dropping of ore therefrom, thus leaving too great an area unsupported, the case was not within the rule requiring the master to provide the servant with a reasonably safe place in which to work; that the so-called "place" was a mere incident of the mining operations, the result of the common labor of those employed in the mine; and that the master's duty was discharged by the exercise of reasonable care in furnishing suitable material and employing competent men to do the work.

(2) That, if there was any negligence, it was that of the miners or of the shift boss, who were fellow-servants of plaintiff.

Error to Gogebic; Haire, J.   Submitted June 14, 1895; original opinion, September 27, 1895.   Rehearing granted December 30, 1895; final opinion, in affirmance of the earlier one, April 21, 1896.

Case by Sehfanja Petaja, alias Sam Johnson, against the Aurora Iron Mining Company for personal injuries. From a judgment for defendant, upon verdict directed by the court, plaintiff brings error.   Affirmed.

*Julius J. Patek,* for appellant.

*Clark & Pearl,* of counsel for appellant:

There was negligence in failing to notify plaintiff of the special danger, and assuring him of safety without making proper examination. Cooley, Torts, 661; *Railway Co.* v. *Bayfield,* 37 Mich. 210; *Swoboda* v. *Ward,* 40 Mich. 424; *Brydon* v. *Stewart,* 2 Macq. H. L. Cas. 30, 33 Eng. L. & Eq. 1; *Coal Co.* v. *McGuire,* 3 Macq. H. L. Cas. 300; *Mellors* v. *Shaw,* 1 Best & S. 437; *Ryan* v. *Fowler,* 24 N. Y. 410; *Railroad Co.* v. *Swett,* 45 Ill. 197; *Schooner Norway* v. *Jensen,* 52 Ill. 373; *Snow* v. *Railroad Co.,* 8 Allen, 441; *Coombs* v. *Cordage Co.,* 102 Mass. 572; *Walsh* v. *Peet Valve Co.,* 110 Mass. 23; *Perry* v. *Marsh,* 25 Ala. 659; *Strahlendorf* v. *Rosenthal,* 30 Wis. 674; *Grizzle* v. *Frost,* 3 Fost. & F. 622; *Railroad Co.* v. *Baugh,* 149 U. S. 368, 387; *Mather* v. *Rillston,* 156 U. S. 391.

The master must furnish the servant with a reasonably safe place in which to perform his work. *Swoboda* v. *Ward,* 40 Mich. 420; *Parkhurst* v. *Johnson,* 50 Mich. 70; *Huizega* v. *Lumber Co.,* 51 Mich. 272; *James* v. *Mining Co.,* 55 Mich. 335; *Smith* v. *Car Works,* 60 Mich. 501; *Adams* v. *Iron Cliffs Co.,* 78 Mich. 271; *VanDusen* v. *Letellier,* Id. 492; *Brown* v. *Gilchrist,* 80 Mich. 56; *Morton* v. *Railroad Co.,* 81 Mich. 423; *Sadowski* v. *Car Co.,* 84 Mich. 100; *Roux* v. *Lumber Co.,* 85 Mich. 519; *Palmer* v. *Railroad Co.,* 87 Mich. 281, 93 Mich. 363; *Tangney* v. *Wilson & Co.,* 87 Mich. 453; *Schlacker* v. *Mining Co.,* 89 Mich. 253; *Ragon* v. *Railway Co.,* 91 Mich. 379; *Gregg* v. *Railway Co.,* Id. 624; *Dewey* v. *Railway Co.,* 97 Mich. 332, 342; *Mather* v. *Rillston,* 156 U. S. 391.

The shift boss was not a fellow-servant of plaintiff. _Mining Co._ v. _Kitts,_ 42 Mich. 39; _James_ v. _Mining Co.,_ 55 Mich. 336; _Hunn_ v. _Railroad Co.,_ 78 Mich. 515; _Harrison_ v. _Railroad Co.,_ 79 Mich. 409; _Lyttle_ v. _Railway Co.,_ 84 Mich. 289; _Fox_ v. _Iron Co.,_ 89 Mich 387; _Palmer_ v. _Railroad Co.,_ 93 Mich. 363; _Erickson_ v. _Railway Co.,_ Id. 414; _Ryan_ v. _Fowler,_ 24 N. Y. 416; _Flike_ v. _Railroad Co_ , 53 N. Y. 549; McKinney, Fellow Servants, p. 54; _Gardner_ v. _Railroad Co.,_ 150 U. S. 349.

_Julius J. Patek (Clark & Pearl_ and _Cahill & Ostrander,_ of counsel), for appellant, on rehearing:

An employé assumes only such risks as are incident to his employment, and do not arise from the negligence of his employer or his deputies in authority over him and his work.   _Railroad Co._ v. _Ward,_ 90 Va. 687; _Davis_ v. _Railroad Co.,_ 159 Mass. 532; _Illingsworth_ v. _Electric Light Co.,_ 161 Mass. 583; _Schulz_ v. _Railway Co.,_ 57 Minn. 271; _Railroad Co._ v. _Shivell,_ (Ky.) 18 S. W. Rep. 944; _Railway Co._ v. _Hamilton,_ (Tex.) 30 S. W. Rep. 679; _Schlereth_ v. _Railway Co.,_ 115 Mo. 87; _Murphy_ v. _Railroad Co_ , Id. 111; _Elledge_ v. _Railway Co.,_ 100 Cal. 282; _Promer_ v. _Railway Co_ , 90 Wis 215; _Johnson_ v _Spear,_ 76 Mich. 139; _Engel_ v. _Smith,_ 82 Mich. 1; _Irvine_ v. _Railroad Co.,_ 89 Mich. 416; _Piette_ v. _Brewing Co.,_ 91 Mich. 605; _Cregg_ v. _Railway Co.,_ Id. 624; _Craven_ v. _Smith,_ (Wis.) 61 N. W. Rep. 317.

_Cahill & Ostrander,_ of counsel for appellant, on rehearing:

Plaintiff was entitled to as safe a place to work in as due care on the part of the master would permit, and this duty of the master to furnish a safe place could not be delegated to others so as to relieve him from responsibility for their want of care.    _Kelley_ v. _Mining Co.,_ 16 Mont. 484; _Railway Co._ v. _Jarvi,_ 53 Fed. Rep. 65; _Mining Co._ v. _Ingraham,_ 70 Fed Rep. 219; _Balhoff_ v. _Railroad Co., post_ (65 N. W. Rep 592); _James_ v. _Mining Co.,_ 55 Mich. 335; _Palmer_ v. _Railroad Co.,_ 87 Mich. 290; _Pantzar_ v. _Mining Co.,_ 99 N. Y. 368; _Coal Co._ v. _Wombacher,_ 134 Ill. 57; _Mining Co._ v. _Schaad,_ 15 Colo. 197.

_Charles E. Miller,_ for appellee:

The doctrine of "safe place" is not applicable to the

facts of this case (*Hoar* v. *Merritt*, 62 Mich. 386; *Beesley*
v. *F. W. Wheeler & Co.*, 103 Mich. 196; *Manning* v. *Rail-
way Co.*, 105 Mich. 260; *Butler* v. *Townsend*, 126 N. Y.
110; *Killea* v. *Faxon*, 125 Mass. 485; *Peschel* v. *Railway Co.*,
62 Wis. 338); and therefore any negligence of the shift
boss would be that of a fellow-servant (Bailey, Mast. Liab.
270; *Mining Co.* v. *Kitts*, 42 Mich. 39; *Adams* v. *Iron Cliffs
Co.*, 78 Mich. 288; *Dewey* v. *Railway Co.*, 97 Mich. 332;
*Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196; *Jenkins* v.
*Iron Ore Co.*, 10 N. Y. Supp. 484; *Geoghegan* v. *Steamship
Co.*, 22 N. Y. Supp. 749).

Upon rehearing, counsel cited, upon the question of
safe place, the following additional authorities: *Fraser*
v. *Lumber Co.*, 45 Minn. 235; *Mining Co.* v. *Clay's Adm'r*,
51 Ohio St. 542; *Schroeder* v. *Railroad Co.*, 103 Mich. 213;
*McGinty* v. *Reservoir Co.*, 155 Mass. 183; *Coal Co.* v. *Scheller*,
42 Ill. App. 619; *Waddell* v. *Simoson*, 112 Pa. St. 567.

HOOKER, J. Plaintiff, a trammer in defendant's iron
mine, was injured by the fall of ore from the roof of
the room in which he was at work loading ore into a car.
The work was conducted as follows: The miners loos-
ened and brought down the ore to the floor of the stope
or room made by taking out the ore, which room was
constantly being enlarged by the process. This ore was
loaded upon cars and removed by common laborers,
called "trammers." As fast as the ore was removed, it
was the practice to support the roof by timbers and posts
set a few feet apart. These were called "sets," and were
put in place by a force or gang of men who were called
from place to place, as wanted, upon notice from the
miners themselves, or through the shift boss or foreman,
who had charge of the work of the mine. Above the shift
boss was a captain, who had general supervision of the
work in the mine. The posts were placed about eight
feet apart, a set being eight feet square. The post, being
two feet in diameter, was capped and braced, and covered
with lagging to support the roof, which had a tendency
to crumble. Sometimes large masses of ore would fall, as
in this instance. The drift or vein was twelve sets wide,

and the room in question was being mined across the vein, about forty feet of the vein being its length, while it would be about one hundred feet wide across the vein, when completed. The miners had taken out sufficient ore to make room for five sets into the vein, and so much appears to have been properly timbered up. At the time of the accident they had mined a space in advance of the last set, which the plaintiff claims was wider than should have been taken without support. The testimony differs about its width, but there is evidence that it was not sufficiently cleaned out to permit of-timbering at the time of the accident, and this does not seem to have been disputed. Some indications of danger were noticed by the trammers, who called the attention of the shift boss to it, but, after looking at it, he told them it was all right, and to "quit monkeying," and resume work, which they did. The accident occurred about 30 minutes later. The court directed a verdict for the defendant.

The claim of the plaintiff is that the master did not furnish a safe place to work. In our opinion, this place where the men were at work was an incident of mining. It was a result of the common work of the miner and the trammer, both of whose labor combined to make it. After the miner had loosened the ore, and the trammer had removed it, it was ready for the timber men, who followed up when notified, putting in sets, which enabled the process of mining to be carried further. The undisputed evidence shows that the trammers and miners had not put the newly-opened space in condition for the timber men, and that the miners had not caused them to be notified that their services were required. If there can be said to have been culpable negligence, it was either in mining too large a space before cutting out the corners preparatory for the sets, or in failing to notify the timber men if sets could have been put in before the ore was still further removed. In either case, if the fault of the miner, it was the negligence of a fellow-servant under the plainest rules. And the same is

true if it was through a failure upon the part of the shift boss to cause timbering to be done earlier. He was a foreman, who directed when and where blasts should be put in, and where the men should work, and who was appealed to to settle questions arising as the work progressed. His relation to the men under him was similar to that of a foreman of a section gang upon a railroad to his men, or one in charge of workmen upon a train. *Schroeder* v. *Railroad Co.*, 103 Mich. 213. Unless it can be said that the duty to furnish a safe place to work is involved, the court was right in directing a verdict for defendant.

There are duties which a master owes to employés, which he must perform; and, while he may confide the performance of such to another, the obligation is still the master's, and he cannot avoid it by authorizing another to perform the act. In such cases it is not an answer to say that he has provided a competent agent, although such agent may be a fellow workman, and in many things a fellow servant, of the injured person. This question has been discussed of late, and authorities cited, in the opinion of Mr. Justice MONTGOMERY in the case of *Schroeder* v. *Railroad Co.*, *supra*. See, also, *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196. In the latter case the distinction between temporary places built to assist in construction, as stagings, and permanent places, within which men are expected to perform labor, is pointed out. The only difference between the Beesley case and this is that in the former the staging was preliminary to the work of construction, while in this it was an incident of the work being done; and we see no difference in principle. The same distinction was made in the case of *Coal & Mining Co.* v. *Clay's Adm'r*, 51 Ohio St. 542. This was a case of injury resulting from a failure to support the roof of a mine, and the court say:

"We need not discuss this proposition, for we have not that case. Here the place was not furnished as in any sense a permanent place of work, but was a place in

which surrounding conditions were constantly changing; and, instead of being a place furnished by the master for the employés, within the spirit of the decisions referred to, was a place the furnishing and preparation of which was in itself part of the work which they were employed to perform. The distinction is shown in a number of cases" (which are cited in the opinion).

See, also, *Butler* v. *Townsend,* 126 N. Y. 110; *Benzing* v. *Steinway,* 101 N. Y. 547; *Stringham* v. *Hilton,* 111 N. Y. 188.

It follows that the judgment should be affirmed.

The other Justices concurred.

---

### ON REHEARING.

Hooker, J. The substance of the question which we are disposed to consider upon the rehearing of this cause is whether the fact that mining operations have proceeded beyond a given point in the stope, and the stope has been "timbered" up to that point, changes the portion so timbered so that it is to be treated as a place to work, within the decisions requiring a master to furnish the servant a reasonably safe place to work. The alleged inaccuracy of the court, in stating that the testimony showed that the miners had not put the newly-opened space in condition for the timber men, has no bearing upon this question; and we are satisfied with the proposition enunciated,—that the failure of the miners or boss to notify the timber men that the place was in readiness was the negligence of fellow-servants of the plaintiff.

But it was urged by counsel that in the discussion of the question the court neglected to consider the fact that, at the time of the accident, the last timbers set did not support the roof of the mine, the lagging being some distance below the roof, by reason of the caving or dropping of ore from the roof, above the lagging, until it left a

space between the lagging and the roof of the mine, and that, as this increased the area of roof unsupported, it caused the ore to fall and injure the plaintiff. It is apparent that if we are to adhere to the holding that miners and trammers are fellow-servants, and that the shift boss, like the foreman of a section gang, is not an exception, there can be no theory upon which the plaintiff can recover, except that, immediately the room was in readiness for timbers, it was the duty of the master to see that they were properly set and maintained. And it is obvious that this claim must be, as it is, planted upon the rule that, in appropriate cases, requires the master to provide a safe place.

The operation of mining, in this and similar mines, is to sink a shaft, and from the shaft start a drift, from which stopes or rooms are excavated across the vein, from the lower to the upper or hanging wall. It is accomplished by caving down and removing the ore. It is manifest that this cannot proceed unless the roof is supported behind the miners, and this is done by putting up timbers to support the roof until the ore shall be excavated beyond. It is said that, when the room has been excavated sufficiently large, it is the practice to cave the room down into the mining sets, and place more timbers on top of the first. Now, if this room can properly be said to be a place furnished to the servants in which to carry on the master's business, and which he must, at his peril, keep in reasonably safe condition, as a factory or warehouse, then the case should have gone to the jury; but, if it is not such a place, then it falls within that other rule, that the duty of the master is performed by using reasonable care in furnishing suitable material and employing capable and efficient men to do the work.

In view of the cases of *Schroeder* v. *Railroad Co.*, 103 Mich. 213, and *Beesley* v. *F W. Wheeler & Co.*, 103 Mich. 196, cited in the former opinion, there is no doubt that a master must furnish a reasonably safe place for a ser-

vant to work, if a structure is required for the carrying on of his business; and the briefs furnished in this case upon the part of the plaintiff would render us more assistance, had they called our attention to cases establishing the claim that a master is obliged to make safe the place which the servant makes and occupies as a means of doing his work, or which results as an incident of the work, although it necessitates his presence in a place, to a greater or less degree, unsafe. In such cases, must the master stay with, or follow up, the servants, to be certain that they make the place safe, so that they or some of them be not injured?

There are many cases which draw the distinction pointed out. Such a case is *Beesley* v. *F. W. Wheeler & Co.*, *supra.* Several other cases are cited in the former opinion. In *Fraser* v. *Lumber Co.*, 45 Minn. 237, it is said: "An important consideration, often overlooked, is whether the structure, appliance, or instrumentality is one which has been furnished for the work in which the servants are to be engaged, or whether the furnishing and preparation of it is itself part of the work which they are employed to perform."

As we understand from the brief of counsel and the record,—and we do not discover a denial of it,—this stope or room starts from a drift at or near what is called the "foot wall," which is the bottom as distinguished from the overlying stratum of the vein of ore. Both foot wall and top wall depart from the level, and dip sharply, so that, in running the stope on a level, it can go but a short distance until the top or overhanging wall is reached; and then the operation is repeated above the lagging, removing the lagging and caving down the roof, supporting the new roof thus formed by new sets placed upon the first. Thus, so far as the lagging is concerned, it has a temporary use merely to enable the miners to push the breast through to the overhanging wall, by supporting the roof. It is a part of the operation of mining,

as much as a blast or a staging, and is not a part of the permanent structure.

The following cases confirm us in our opinion that, as an incident or means of excavating the ore, the master has only the duty of furnishing competent men, and furnishing suitable materials for the use of those engaged in the common employment: *Hall* v. *Johnson*, 3 Hurl. & C. 589, where it was held that "an underlooker in a mine, whose duty it was to examine the roof, and prop it up if dangerous, was a fellow laborer with a workman." *Waddell* v. *Simoson*, 112 Pa. St. 567, where it was decided that "the operator of a coal mine fulfills the measure of his duty to his employés if he commits his work to careful and skillful bosses and superintendents." And in *Consolidated Coal Co.* v. *Scheller*, 42 Ill. App. 619, the court held that, if a master exercises reasonable or ordinary care in selecting men and materials, a mine owner is not liable if the roof falls. In *Quincy Mining Co.* v. *Kitts*, 42 Mich. 34, a workman was injured by a fall occasioned by the breaking of a bridge across a permanent opening, consisting of a winze or perpendicular shaft for ventilation in a mine. The timber man was held to be a fellow-servant, which excludes the theory contended for in this case. A case substantially like the one before us is *Coal & Mining Co.* v. *Clay's Adm'r*, 51 Ohio St. 542 (cited in the former opinion).

We see no occasion to change or modify the opinion heretofore filed in this cause, which disposed of all questions necessary to a decision of the case.

Judgment affirmed.

The other Justices (LONG, C. J., GRANT, MONTGOMERY, and MOORE, JJ.) concurred.