(May 15, 1905.)

## LARSEN v. LE DOUX.

[81 Pac. 600.]

MASTER'S LIABILITY—INJURY TO SERVANT—FALLING OF SCAFFOLD—VICE-PRINCIPAL—FELLOW-SERVANT—NEGLIGENCE.

1. The appellants were contractors engaged in the erection of what is known as the Elk's Temple, Moscow. The respondent was employed with one K. to furnish mortar and brick to the bricklayers. One B. was the manager and in immediate charge of the construction of said building for the appellants. After the brick work on the northerly side of the building was completed it was necessary to erect a scaffold across the west end of the building for the use of the bricklayers. B. directed K. to erect such scaffold, and in doing so it was necessary for him to put in place two joists or cross-pieces on which to lay the floor of the scaffold. From a lot of material furnished for that purpose, he

selected two pieces and one of the brick masons nailed the ends thereof in place. Thereafter B. and K. laid some boards on said scaffold and thereafter the respondent assisted K. in completing the erection thereof. B. directed K. to lap the ends of the floor across the joist, which he neglected to do. Thereafter the respondent and K. placed a considerable quantity of mortar and bricks on said scaffold and the section supported by one of said cross-pieces fell, the cross-piece having broken, and in the fall the respondent was injured. *Held,* that if there was negligence or carelessness in placing a defective cross-piece in said scaffold, it was the negligence and carelessness of a fellow-servant and the appellants are not liable therefor.

2. If the act or omission that caused the injury was one pertaining to the duty the master owed to his servant, he is responsible for the manner of its performance without regard to the rank of the servant or employee to whom it is intrusted. But if it is one pertaining to the duty of an operative, the employee performing it is a fellow-servant with his colaborers whatever his rank, for whose neglect the master is not liable.

3. The true test in all cases by which it may be determined whether the negligent act causing the injury is chargeable to the master or is the act of a coservant is, Was the offending employee in the performance of the master's duty in reference to the particular act causing the injury, an act done in the performance of a duty that the master owed his servant? If so, his negligence is that of the master and liability follows; if not, he was a mere coservant engaged in the common employment with the injured servant without reference to his grade or rank or his right to employ or discharge men, or to his control over them. In this case the master furnished sufficient safe material for the erection of said scaffold, and B. having directed K. and the respondent to construct said scaffold, and cautioned K. to construct it safely, the appellants were not liable for the carelessness of K. in constructing the same.

(Syllabus by the court.)

APPEAL from the District Court of Latah County. Honorable Edgar C. Steele, Judge.

Action to recover damages received in the fall of a defective scaffold. Judgment for plaintiff. Reversed.

Forney & Moore, for Appellants.

From the facts in this case it appears that the plaintiff assisted in the construction of the scaffold; had a thorough

knowledge of its defects, if any; in brief, had a better knowledge than his employers; made no objection whatever to its construction and then he and his fellow-laborers began hauling brick and mortar upon it to such an extent that the scaffolding fell—not a faulty construction, but from the increased weight placed upon it by the plaintiff and his colaborers. In his work on Fellow-servants, McKinney, at page 77, says: "Where a workman is injured by falling from a scaffold negligently constructed by himself and his colaborers, the master is clearly not liable." (*Allen v. Galveston etc. Ry. Co.,* 14 Tex. Civ. App. 344, 37 S. W. 171.) There is another principle of law which it seems to us leads to the same result. Ordinarily, the master owes his servant the duty of inspection or reasonable care in furnishing him safe and suitable means for performing his work. This rule has no reference to the safety and condition of the thing the servant is employed to repair or complete. (*Carlson v. Oregon Short Line etc. Ry. Co.,* 21 Or. 497, 28 Pac. 497; *Armour v. Hahn,* 111 U. S. 313, 4 Sup. Ct. Rep. 433, 28 L. ed. 440; *Gulf etc. Ry. Co. v. Jackson,* 12 C. C. A. 507, 65 Fed. 48; *Marsh v. Herman,* 47 Minn. 537, 50 N. W. 611; *Seesley v. F. W. Wheeler & Co.,* 103 Mich. 196, 61 N. W. 658, 27 L. R. A. 266; *Hogan v. Field,* 44 Hun, 72; *Benzing v. Steinway,* 101 N. Y. 547, 5 N. E. 449; *Brick v. Rochester etc. R. R. Co.,* 98 N. Y. 211.) A servant is not a mere machine employed to drive a nail here, or a spike there, where directed by the master or some one representing him. Many things involving the exercise of judgment may properly be left to the servant. Hence it has been held, where the master employs competent workmen and provides suitable material for staging, and intrusts the duty of erecting the staging to the workmen, as a part of the work which they are engaged to perform, that he is not liable to one of the workmen for injuries resulting to one of them from the falling of the staging. The negligence in such cases resolves itself into negligence of a fellow-servant; and the principle has been applied under a variety of circumstances. (*Kelley v. Norcross,* 121 Mass. 508; *Killea v. Faxon,* 125 Mass. 485; *Armour v. Hahn,* 111 U. S. 313, 4 Sup. Ct. Rep. 433, 28 L. ed. 440; *Peschel v.*

*Ry. Co.,* 52 Wis. 338, 21 N. W. 269; *Davis v. Trade Dollar Min. Co.,* 117 Fed. 122, 54 C. C. A. 636. In the case at bar, evidently overloading the scaffold by brick and mortar caused it to break. The defendants were not present and were not required to be present to inform the plaintiff and his fellow-workers as to the excessive weight placed upon the scaffold. This was a risk the plaintiff assumed. It was his own act and that of his fellow-workman in overloading the scaffold and causing it to break. (*Richmond Locomotive Works v. Ramsey,* 131 Fed. 200; *McDonald v. Buckley,* 109 Fed. 290, 48 C. C. A. 372.)

W. W. Griffith and Stewart S. Denning, for Respondent.

It is familiar law that a servant assumes, as one of the incidents of his employment, all risks of injury from the negligence of a fellow-servant, because the master cannot, by the exercise of the utmost care and caution, guard against such negligence. But there are practically two lines of decisions in this country as to who is a fellow-servant within the rule. On the one hand we have what is known as the Ohio doctrine, which adopts the superior servant criterion; that is, it is held that when the master has given to an employee supervisory control and management of his business, or some particular department thereof, such person, while so acting, stands in the place of the master, as to those under his direction and supervision, and for his negligence the master is liable. The courts of Ohio, Washington, Missouri, Maine, Michigan, Kentucky and other states recognize this rule to a greater or less extent. On the other hand, we have the rule obtaining in a large number of states, that the master's liability depends upon the character of the act in the performance of which the injury arises, and not the grade or rank of the negligent employee. If the act is one pertaining to the duty the master owes to his servant, he is responsible for the manner of its performance, without regard to the rank of the servant or employee to whom it is intrusted; but if it is one pertaining only to the duty of an operative, the employee performing it is a fellow-servant with his colaborers, whatever his rank,

for whose negligence the master is not liable. (*Mast v. Kern,* 34 Or. 247, 75 Am. St. Rep. 580, 54 Pac. 950; *Allen v. Bell,* 32 Mont. 69, 79 Pac. 582.) Respondent contends that, whichever rule may be adopted or followed by this court, Burke was a vice-principal and not a fellow-servant with respondent. The agent, to whom the control of the work is given by the master, together with the power of hiring and discharging employees, and of superintending the work, whose orders the servants are bound to obey, stands in the place of the master, and is not a fellow-servant within the meaning of the rule as applied to laborers and servants. (*Brothers v. Cartier,* 52 Mo. 372, 14 Am. Rep. 424; *Zintek v. Stimson Mill Co.,* 6 Wash. 178, 32 Pac. 997, 33 Pac. 1055, 9 Wash. 395, 37 Pac. 340; *McDonough v. Great Northern Ry. Co.,* 15 Wash. 244, 46 Pac. 334; *Brabbits v. Chicago etc. Ry. Co.,* 38 Wis. 289; *Baltimore etc. R. R. Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. Rep. 914, 921, 37 L. ed. 772; *Allend v. Spokane Falls etc. Ry. Co.,* 21 Wash. 324, 58 Pac. 244; *Kelley v. Fourth of July Min. Co.,* 16 Mont. 484, 41 Pac. 273; *Cunningham v. Union Pac. Ry. Co.,* 4 Utah, 206, 7 Pac. 795; *Beeson v. Green Mountain etc. Min. Co.,* 57 Cal. 20; *Consolidated Coal Co. v. Wombacher,* 134 Ill. 57, 24 N. E. 627; *Mullan v. Philadelphia etc. Steamship Co.,* 78 Pa. St. 25, 21 Am. Rep. 2; *Malone v. Hathaway,* 64 N. Y. 5, 21 Am. Rep. 573.) The master should not direct the servant to work in a place which he knows, or, by the exercise of reasonable care and diligence might know, to be dangerous, within the rule. (Bailey on Masters' Liability for Injuries to Servants, 36; *Consolidated Ice Co. v. Kiefer,* 26 Ill. App. 466; *Johnson v. First Nat. Bank,* 79 Wis. 414, 24 Am. St. Rep. 722, 48 N. W. 712; *Meier v. Morgan,* 82 Wis. 289, 33 Am. St. Rep. 39, 52 N. W. 174; *Cook v. St. Paul etc. Ry. Co.,* 34 Minn. 46, 24 N. W. 311; *Noyes v. Smith,* 28 Vt. 59, 65 Am. Dec. 222; *Hutchinson v. Ry. Co.,* 5 Ex. 343; *Gibson v. Railway Co.,* 46 Mo. 163, 2 Am. Rep. 497; *Huddleson v. Lowell Mach. Shop,* 106 Mass. 282; *Snow v. Ry. Co.,* 8 Allen, 441, 85 Am. Dec. 720; *Ryan v. Fowler,* 24 N. Y. 410, 82 Am. Dec. 315; *Patterson v. Pittsburg etc. R. R. Co.,* 76 Pa. St. 389, 18 Am. Rep. 412; *Swoboda v.*

*Ward,* 40 Mich. 420.)    When Larson was directed by the foreman Burke to perform certain services on the scaffold, he was justified in obeying orders, and cannot be charged with contributory negligence or with having assumed the risks; he had a right to expect that the master would do his duty. (*Russell v. Minneapolis Ry. Co.,* 32 Minn. 230, 20 N. W. 147.)

SULLIVAN, J.—This action was brought to recover $1,000 damages for a personal injury alleged to have been sustained by the plaintiff, based upon the negligent and defective construction of the scaffold alleged to have been erected by the appellants during the construction of what is known as the Elks' Temple, in the city of Moscow, Latah county, Idaho. The answer to the amended complaint admits certain allegations and denies others, and puts in issue the allegation of the amended complaint as to the negligent and defective construction of said scaffold, and as an affirmative defense averred that if the plaintiff sustained any injuries whatever from the falling of the scaffold, the same was caused by his own negligence and carelessness, and by the acts, conduct, negligence and carelessness of one George R. Knowles, a fellow-servant and coemployee of the respondent, and not through any want of care, diligence or skill on the part of the appellants.

The cause was tried by the court with a jury, and a verdict and judgment was entered against the appellants for the sum of $250, and the appeal is from the order overruling a motion for a new trial and from the judgment.

The following facts appear from the record: That the appellants were copartners and doing business as contractors in the erection of buildings, and were at the time of the accident engaged in the erection of what is known as the Elks' Temple, in the city of Moscow; that the respondent, from the twentieth up to the twenty-fourth day of October, 1904, was employed to work upon said building, and was engaged in wheeling mortar and bricks on the scaffold in connection with a fellow-workman by the name of Knowles; that Knowles had been engaged in the same work for about three weeks prior to the date of the accident. It appears from the testimony that

one Burke was the foreman or superintendent in the construction of said building for the appellants; that on the morning of the twenty-fourth day of October, Burke directed Knowles to erect a scaffold for the use of the brick masons, the falling of one section of which caused the accident. The record shows that Burke, the foreman, had had about twenty years' experience as a bricklayer and mason and as a contractor, and also shows that he was a careful and competent man. It is also shown that Knowles was a trustworthy man and had assisted in erecting scaffolds about said building, and that there was an abundance of good material on hand from which to erect said scaffold, and more than sufficient for that purpose. Burke testified that he had given Knowles instructions how to build the scaffold, and directed him particularly to lap the ends of the planks that were placed on the joists or cross-pieces of the scaffold, and that he failed to follow such instructions. It further appears that in the joist or cross-piece that broke there was a knot or gnarl, and it was visible from one side only; that the joist was defective in that particular; that Burke was present when Knowles began the construction of said scaffold; that Knowles took two pieces of two by eights for such joists, and that one of the brick masons nailed the ends of the same for him; that said scaffold was between forty and fifty feet long and in sections, and that the joists along the entire length of it were from sixteen inches to four feet apart, and that the two by eights or two by tens placed on said joists as the floor of said scaffold were about eleven feet long; that said Burke assisted said Knowles in putting said plank on the first section of said scaffold, and that they lapped the ends of the same. At about that time the respondent was requested to help Knowles complete the scaffold, and Burke went to some other part of the building; that, instead of lapping said ends as directed by Burke, they put said planks end to end, and after they had completed that work they proceeded to place bricks and mortar on said scaffold to be used by the bricklayers; that work had continued for about an hour when a section of the scaffold gave way and the respondent and

Knowles were precipitated to the floor below, a distance of sixteen or seventeen feet. The respondent testified that from the excessive weight of the bricks and mortar placed on the scaffold by him and his fellow-servant, Knowles, it broke and fell. In the fall of the scaffold the respondent broke a small part off from the bone in his heel.

It is contended by counsel for appellant that under the law and the facts of this case the appellants are not liable. In damage cases such as the one at bar the ancient rule of *respondeat superior,* or, let the principal be held responsible, was applied without exception until in the year 1877. In that year the case of *Priestly v. Fowler,* 3 Mees. & W. 1, was decided, and with that case began the history of the fellow-servant rule. (See notes on that case, 17 English Ruling Cases, 241.) It is stated in McKinney on · Fellow-servants, section 4, that the effect of that decision on modern jurisprudence has been characterized as second to no adjudication to be found in the law reports. And it is stated, among other things, in section 98 of Beach on Contributory Negligence, that no other reported case has changed the current of decision more radically than this, and "all subsequent common-law report books contain refinements upon the doctrine, here for the first time announced, that the superior may not, under given conditions, be held to respond for the tortious or negligent acts of his agent." The doctrine which relieves the master from liability for injuries caused by the negligence of fellow-servant is of very wide application, and it originated in cases where servants were engaged in a common enterprise. It modified the doctrine that the principal is liable for the negligent acts of his agent upon the theory or principle that the servant assumed the ordinary dangers incident to the employment, and that an obligation on the part of the master to take better care of the servant than he may reasonably be expected to take of himself will not be implied.

We have in this country two lines of decision on this question, one known as the Ohio doctrine and the other as the New York doctrine or rule. The former doctrine is to the effect that the agent to whom the control of the work is given

by the master, together with the power of hiring and discharg-
ing employees and of superintending the work, whose orders
the servants are bound to obey, stands in the place of the mas-
ter, and is not a fellow-servant within the meaning of the rule
as applied to laborers and servants. The Ohio doctrine
adopts the superior servant criterion to the effect that when
the master has given to an employee supervisory control and
management of his business, or some particular department
thereof, such person, while so acting, stands in the place of
the master, and for his negligence the master is liable. This
is known as the Ohio doctrine, and was adopted or enunciated
by the supreme court of the United States in *Railway Co. v.
Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184, 28 L. ed. 787. But
that case has been practically overruled by the subsequent
case of *Railroad v. Baugh,* 149 U. S. 368, 13 Sup. Ct. Rep.
914, 37 L. ed. 772. Under the Ohio rule the liability of the
master is made to depend upon the rank or grade of the per-
son whose negligence caused the injury. The opinion in *Bal-
timore etc. R. Co. v. Baugh, supra,* was prepared by Mr. Jus-
tice Brewer, and he explains at length the Ross case, *supra,*
and in doing so cites numerous decisions from Minnesota
and other states, and quotes with approval from *Brown v.
Winona etc. R. R. Co.,* 27 Minn. 162, 38 Am. Rep. 285, 6 N.
W. 484, as follows: ''On the other hand, the great majority
of courts, both in this country and in England, hold that mere
difference in grade of employment, or in authority, with re-
spect to each other, does not remove them from the class of
fellow-servants as regards the liability of the master for in-
juries to one caused by the negligence of the other.''

The learned justice also refers to certain Ohio cases, and
quotes from them and holds that the ''question under consid-
eration is essentially one of general law''; that it does not de-
pend upon any statute or spring from any local usage or cus-
tom; that there is in it no rule of property, but that it rests
upon those considerations of right and justice that have been
gathered into the great body of the rules and principles known
as the ''common law''; that there is no question of the power
of the state to legislate and change the rule of the common

law, but in the absence of such legislation the question is one determinable only by the general principles of the common law.

Referring to the question under consideration, the learned justice says: "It is also one of the vexed questions of the law and perhaps there is no one matter upon which there are more conflicting and irreconcilable decisions in the various courts of the land than the one as to what is the test of a common service, such as to relieve the master from liability for the injury of one servant through the negligence of another," and proceeds and sustains the New York rule.

In the case of *Weeks v. Shearer,* 111 Fed. 330, 49 C. C. A. 372, from the circuit court of appeals of the eighth circuit, is a late decision prepared by Circuit Judge Sanborn. It is a very instructive and exhaustive opinion containing the citations of many authorities. It is there stated: "An employee frequently acts in a dual capacity—at times a fellow-servant, at times a vice-principal—and the line of demarcation between the negligence whose risk the servant assumes and that for which the master is liable is this, to wit, if the act is done in the discharge of a positive duty of the master, then the negligence therein is the negligence of the latter. If it is done in the discharge of any other duty of the employee, it is the negligence of the servant, the risk of which his fellows have assumed. Some of the rules which we have thus briefly restated have been the subjects of volumes of debates and conflicting decisions, but they have at last become established beyond doubt or cavil by the repeated decisions of the highest court in the land." (See, also, *Beesley v. Wheeler & Co.,* 103 Mich. 196, 61 N. W. 658, 7 L. R. A. 266.)

In *Mast v. Kern,* 34 Or. 247, 75 Am. St. Rep. 580, 54 Pac. 950, after stating the Ohio doctrine, the court says: "On the other hand, the rule, and the one now unquestionably established and supported by the great weight of authority, both in this country and in England, is that the liability of the master depends upon the character of the act in the performance of which the injury arises, and not the grade or rank of the negligent employee. If the act is one pertaining to the duty the

master owes to his servant, he is responsible for the manner of its performance, without regard to the rank of the servant or employee to whom it is intrusted; but if it is one pertaining only to the duty of an operative, the employee performing it is a fellow-servant with his colaborers, whatever his rank, for whose negligence the master is not liable. (McKinney on Fellow-servants, sec. 43 et seq.; Bailey on Masters' Liability for Injuries to Servants, 226 et seq.; Wood on Master and Servant, sec. 438.)'' The court, in addition to the authorities above cited, cites many others and states that many other authorities could be cited to the same effect, but that those were sufficient to show the irresistible current of decisions, as well as the ground upon which the doctrine rests and its application to given facts, and that the former decisions of that court upon that question has always been made to depend upon the character of the act causing the injury, rather than the grade or rank of the offending employee. That court further says: ''The true test in all cases by which it may be determined whether the negligent act causing the injury is chargeable to the master, or is the act of a coservant, is, Was the offending employee in the performance of the master's duty, or charged therewith, in reference to the particular act causing the injury? If he was, his negligence is that of the master and the liability follows; if not, he was a mere coservant, engaged in a common employment with the injured servant, without reference to his grade or rank, or his right to employ or discharge men, or to his control over them. In short, the master is liable for the negligence of an employee who represents him in the discharge of his personal duties toward his servants. Beyond this he is liable only for his own personal negligence. 'This,' as said by Judge Dillon, 'is a plain, sound, safe and practical line of distinction. We know where to find it and how to define it. It begins and ends with the personal duties of the master. Any attempt to refine based upon the notion of 'grades' in the service, or, what is much the same thing, distinct 'departments' in the service (which departments frequently exist only in the imagination of the judges, and not in fact), will only breed the confu-

sion of the Ohio and Kentucky experiments, whose courts have constructed a labyrinth in which the judges who made it seem to be able to 'find no end in wandering mazes lost.' '' (*Peschel v. Chicago etc. Ry. Co.*, 62 Wis. 338, 21 N. W. 269; *Hogan v. Field*, 44 Hun, 72; *Marsh v. Herman*, 47 Minn. 537, 50 N. W. 611.)

As to the question of who are fellow-servants and who are vice-principals, the legislature of this state has not, by legislative act, determined. And that question remains as stated by Justice Brewer in *Baltimore etc. R. Co. v. Baugh, supra,* one of common or general law, and we think the rule more consonant with reason and justice is that above designated as the New York rule or criterion, and is that the master is liable for the negligence of an employee who represents him in the discharge of his personal duties to his servants and beyond that he is liable only for his own personal negligence. Or, as stated in section 23 of McKinney on Fellow-servants: ''The true test, it is believed, whether an employee occupies the position of a fellow-servant to another employee, or is the representative of his master, is to be found, not from the grade or rank of the offending or injured servant, but it is to be determined by the character of the act being performed by the offending servant by which another employee is injured; or, in other words, whether the person whose status is in question is charged with the performance of a duty which properly belongs to the master.''

Believing that to be the correct rule, we will now proceed and apply it to the facts of this case. Burke had charge of the construction of said building for the master, the appellants here. It was not a large building or structure that required expert scaffold builders to erect the scaffolds. It appears that the respondent and the man Knowles who erected the scaffold were fellow-workmen or servants engaged principally in supplying the brick masons with bricks and mortar. The northerly side of the building had been completed, and the brick masons were proceeding with the laying of the bricks on the front of the building. Burke directed Knowles to erect a scaffold for the brick masons. It appears that the

scaffold was put up in two or more sections, and it required two joists or cross-pieces to be put up connecting the sections. It also appears that there was plenty of lumber at hand such as was used there in erecting such scaffolds; that said Knowles selected two pieces that were two by eight inches and about eleven feet long, and used them as joists or cross-pieces for the scaffolds; that while he held them in position one of the bricklayers nailed the ends thereof; that while that was being done Burke, who was near by, and after the joist was put in place, assisted Knowles in laying some of the floor of said scaffold. It also appears that while Knowles was putting up said joist, the respondent was at the north side of the building clearing away some rubbish; that he was thereafter called by Burke and directed to assist Knowles in completing the scaffold, which he did. After the scaffold was completed the appellant and said Knowles proceeded to wheel brick and mortar upon said scaffold for the brick masons. They had continued that work for from a half an hour to an hour, and as both of them were standing on one section of said scaffold, it gave way and fell and they fell some sixteen or seventeen feet. The injury was occasioned by the breaking of one of said joists or cross-pieces. It appears that said joist had a gnarl or knot on one side thereof, and, no doubt, weakened it to some extent. One of the witnesses testified that said gnarl could be seen from only one side of the cross-piece and made it cross-grained on that side. The respondent himself testified that "from the excessive weight of this brick and mortar it broke, and I fell below, and Mr. Knowles fell with me."

The question arises under those facts whether it was the duty of the appellants to construct said scaffold, or was their duty ended in that regard when they furnished sufficient suitable material therefor. We think their duty ended when they furnished sufficient and suitable material, and the fact that Burke directed Knowles to build this scaffold, and the appellant to assist him, and was there for a little while himself, and laid a few boards on the floor of said scaffold, does not make the appellants liable. Clearly, Burke did not select

said cross-piece, but left that with Knowles, the respondent's fellow-servant. That being true, the injury was occasioned by Knowles' oversight in not selecting a stronger cross-piece. It was no part of the duty that the appellants owed to respondent to place any boards on said scaffold, and because Burke laid a few boards thereon, that does not make his act the act of the appellants, that not being a personal duty that the appellants owed to the respondent.

It is further shown that Burke instructed Knowles to make the scaffold strong and to be sure and lap the planks of the floor thereof over the joists; that the planks that Burke laid thereon were so lapped, but the planks laid thereon by Knowles and the appellant were not lapped but were placed end to end—butted up against each other. The accident, no doubt, occurred because of Knowles' failure to erect the scaffold as instructed by Burke and because of the excessive amount of mortar and bricks placed thereon, and for neither of which are the appellants liable. The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed herein. Costs are awarded to appellants.

Stockslager, C. J., and Ailshie, J., concur.

ON REHEARING.

(June 27, 1905.)

STOCKSLAGER, C. J.—Counsel for respondent, with his usual force and ability, insists that the court has misconstrued the facts and misapplied the law to the facts as they exist in this case. For the reason that we know the petition is filed in good faith, we have again carefully examined the facts as they appear in the record. The questions of law applied to the facts in this case, as we understand them, were carefully considered before the case was assigned to Mr. Justice Sullivan, and we find nothing in the petition or authorities there referred to that changes our views.

It seems to me that Mr. Burke took every precaution to have the scaffold so constructed that no accident could happen with reasonable use of it. It is apparent that the direct

cause of the accident was overloading the scaffold with brick and mortar. It is true that it is shown that one of the joists upon which the scaffold was constructed was defective, but it was not shown that Mr. Burke was in any way responsible for the use of this particular joist. He had given his instructions as to the material to be used and the manner of construction of the scaffold, and it appears that there was sufficient material to construct the scaffold according to his direction. It seems that Mr. Burke had business elsewhere in the building and left the completion of the scaffold to Mr. Knowles and respondent; that it was not constructed according to his direction. The question arises, Would the scaffold have withstood the overloading with brick and mortar had the work been done according to the instructions of Mr. Burke? Again, to what extent was the joist weakened by the knot or gnarl? There is a wide field for speculation and theory here, if it were necessary to indulge in them, but under the facts as they appear in the record in this case, we do not think it necessary to enter this field.

In any view of the case other than the one reached in the opinion heretofore filed, contractors would be compelled to do their own work or assume the risk of every accident which might occur, without any apparent blame upon anyone connected with the construction of the building.

The petition for a rehearing is denied.

Ailshie, J., and Sullivan, J., concur.