(January 15, 1916.)

## CHARLES H. COULSTON, Respondent, v. THE DOVER LUMBER CO., a Corporation, Appellant.

[154 Pac. 636.]

PERSONAL INJURIES—NEGLIGENCE OF MASTER—SAFE PLACE TO WORK—PROMISE TO REPAIR—ASSUMED RISK — VICE-PRINCIPAL—FELLOW-SERVANT.

1. Where an employee has full knowledge of the unsafe condition of the premises or appliances in and with which he has to work, he is deemed to have voluntarily assumed the special risk incident to such employment, subject, however, to the exception that in case the servant notifies the master of such unsafe condition and objects to continue working under the special risk incident thereto, but is induced to continue working under such risk by a promise of the master to remove the danger within a reasonable time, the servant does not thereafter assume the risk during such time.

[As to assumption of risk in the case of saws, see note in Ann. Cas. 1913C, 125.]

2. In such cases the servant is deemed to have no cause of action unless he prove that his reliance upon the promise of the master was the moving consideration for his consent to continue subjecting himself to such special risk.

3. *Held,* under the evidence in this case that the alleged defective guide of a band-saw was not the proximate cause of the injury.

4. If the act of one employee that caused an injury to another was an act pertaining to the duty owed by the master to a servant, the master is responsible for the manner of its performance, irrespective of the rank or grade of the servant or employee to whom it was intrusted; but if it was an act pertaining only to the duty of an operative under such employment, the employee performing such act is a fellow-servant of his coemployees, whatever his rank or grade may be, and in the latter case the master is not liable for an injury caused by the negligence of such employee. (*Larsen v. Le Doux,* 11 Ida. 49, 81 Pac. 600, cited and followed.)

5. Under the facts of this case, *held,* that the sawyer was a fellow-servant of the plaintiff and not a vice-principal.

APPEAL from the District Court of the Eighth Judicial District for Bonner County. Hon. Robert N. Dunn, Judge.

Action to recover damages for personal injuries. Judgment for plaintiff. *Reversed.*

H. H. Taylor and James A. Williams, for Appellant.

There is no evidence showing that respondent continued at his work in reliance upon the alleged promises to repair; that must have been alleged and proved in order to have brought him within the terms of the exception. (*Notthoff v. Los Angeles Gas & Electric Co.,* 161 Cal. 93, 118 Pac. 436, 438–441; 1 Labatt on Master and Servant, sec. 418, p. 1184; *Roy v. Hodge,* 74 N. H. 190, 66 Atl. 123; 26 Cyc. 1211, 1212; *Gulf C. & S. F. R. Co. v. Garren,* 96 Tex. 605, 97 Am. St. 939, 74 S. W. 897.)

The act of the sawyer, if it were a negligent act, could no more be attributed to the appellant than could the carriage crew's failure to withdraw the dogs. As to such acts, every member of the crew was to every other member a fellow-servant. (*Snyder v. Viola Mining & Smelting Co.,* 3 Ida. 28, 26 Pac. 127; *Sartin v. Oregon Short Line R. Co.,* 27 Utah, 447, 76 Pac. 219; *Larsen v. Le Doux,* 11 Ida. 49; 81 Pac. 600.)

Idaho, California, New York and a majority of the states repudiate the superior servant rule. (26 Cyc. 1307; *Ongaro v. Twohy,* 57 Wash. 668, 107 Pac. 834; *Wood v. Potlatch Lumber Co.,* 213 Fed. 591, 130 C. C. A. 171; *Zienke v. Northern Pac. R. Co.,* 8 Ida. 54, 66 Pac. 828; *Bokamp v. Chicago & A. R. Co.,* 123 Mo. App. 270, 100 S. W. 689.)

Nondelegable duty has no place in this case; the sawyer was not in performance of a duty imposed upon the master personally. The machinery was safe, every member of the crew was experienced and competent; no criticism of the plan or usual method of operation is made; and it is not claimed that supervision was necessary. It is not a case where a dangerous agency was put in operation without warning those occupying a place of danger. (26 Cyc. 1318–1320; *Lepan v. Hall,* 128 Mich. 523, 87 N. W. 619; *Doerr v. Daily News Pub. Co.,* 97 Minn. 248, 106 N. W. 1044; *Small v. Allington & Curtis Mfg. Co.,* 94 Me. 551, 48 Atl. 177; *McDonald v. Buckley,* 109 Fed. 290, 48 C. C. A. 372; *Beck v.*

*International Harvester Co.,* 85 Wash. 413, 148 Pac. 35; *Vanordstrand v. Northern Pacific Ry. Co.,* 86 Wash. 665, 151 Pac. 89.)

George D. Lantz and Wm. J. Costello, for Respondent.

There was in this case a defective part of a machine, the guide, the existence of which defect was likely to cause serious consequences unless repaired. Complaint was made to the master resulting in a promise to repair, thus bringing him within the rule laid down by this court in the case of *Harvey v. Alturas Gold Min. Co.,* 3 Ida. 510, 31 Pac. 819. (Beach on Negligence, sec. 140; *Eureka Co. v. Bass,* 81 Ala. 200, 60 Am. Rep. 152, 8 So. 216; *Gibson v. Minneapolis, St. P. etc. Ry. Co.,* 55 Minn. 177, 43 Am. St. 482, 56 N. W. 686; *Texas & N. O. Ry. Co. v. Bingle,* 9 Tex. Civ. 322, 29 S. W. 674; *Smith v. E. W. Backus Lumber Co.,* 64 Minn. 447, 67 N. W. 358.)

The later cases decided by the supreme court of the state of Washington clearly show that the rule laid down by the courts of that state for determining who are and who are not vice-principals is identical with that adopted by Idaho.

"In the states of both Washington and Idaho, the character of the act is the criterion or rule for determining who are fellow-servants and who are vice-principals." (*Jackson v. Danaher Lumber Co.,* 53 Wash. 596, 102 Pac. 416; *McDonough v. Great Northern Ry. Co.,* 15 Wash. 244, 46 Pac. 334; *Hammarberg v. St. Paul & Tacoma Lumber Co.,* 19 Wash. 537, 53 Pac. 727.)

"The rule has been frequently announced by this court that it is not the rank of the servant but the character of the act which determines the relationship of coemployees." (*Jacobsen v. Rothschild,* 62 Wash. 127, 130, 113 Pac. 261.)

It follows that the decisions of the state of Washington will be in point in determining the relationship which existed between respondent and the head sawyer, Doe. (*King v. Page Lumber Co.* 66 Wash. 123, 119 Pac. 180; *Comrade v. Atlas Lumber & Shingle Co.,* 44 Wash. 470, 87 Pac. 517; *Wester-*

*lund v. Rothschild,* 53 Wash. 626, 102 Pac. 765; *St. John v. Cascade Lumber etc. Co.,* 53 Wash. 193, 101 Pac. 833.)

The head sawyer, when charged with the nondelegable duty of a master, becomes, and is, a vice-principal. (*Eidner v. Three Lakes Lumber Co.,* 45 Wash. 323, 88 Pac. 326; *Maloney v. Stetson & Post Mill Co.,* 46 Wash. 645, 90 Pac. 1046; *Evans v. Louisiana Lumber Co.,* 111 La. 534, 35 So. 736; *Hunt v. Desloge Consol. Lead Co.,* 104 Mo. App. 377, 79 S. W. 710; *Missouri Malleable Iron Co. v. Dillon,* 206 Ill. 145, 69 N. E. 12; *Illinois Southern R. Co. v. Marshall,* 210 Ill. 562, 71 N. E. 597, 66 L. R. A. 297.)

The giving of orders with respect to work by subordinates was one of the master's duties. (Labatt, Master & Servant, sec. 541; *Coffeyville Vitrified Brick & Tile Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856; *Dixon v. Union Iron Works,* 90 Minn. 492, 97 N. W. 375.)

SULLIVAN, C. J.—This action was brought to recover $50,000 damages for personal injuries sustained while working in appellant's sawmill. It is alleged in the complaint that the defendant company, who is appellant here, owns and operates a certain sawmill, and for the purpose of manufacturing lumber, a certain appliance or apparatus, commonly known as a carriage, was used to hold in place the log which is being sawed; that said carriage is operated and moves back and forth upon a track by means of steam power; that on said carriage there are blocks or knees which are used to hold, follow up and push forward the log as it is being sawed and as each board is sawed from the log to push the log forward toward the saw that the next board may be sawed therefrom; that said carriage was operated by a head sawyer in the employ of the defendant company, who had the control and direction of the men employed in and around said carriage, which men consisted of a head sawyer, a setter, a rider and a tail sawyer or off-bearer; that plaintiff was the tail sawyer; that in the operation of said carriage, the head sawyer's orders are given to and obeyed by the tail sawyer, rider and setter, and at the time of the happening

of the injuries complained of, they were working under the orders and directions of said head sawyer; that the defendant maintained over said saw a certain sliding or adjustable gauge or guide which is used to keep the saw steady and keep it from jumping from side to side, which gauge or guide is adjustable to conform to the thickness of the log being sawed; that it was the duty of the tail sawyer to adjust said guide to the size of the log; that on the 30th of July, 1912, the plaintiff was employed as tail sawyer and had been so employed from about the first of June, 1912; that for some time prior to the accident said gauge had been in a defective condition, and that it had not stayed in place but kept sliding down, of which defective condition plaintiff had notified the defendant company through its foreman, who informed the plaintiff that he would look after it, but he failed to do so; that because of the defective condition of said gauge plaintiff was compelled to and was giving his almost constant attention to keep said gauge in place in order to avoid an accident; that on the 12th day of July, 1912, the plaintiff being engaged as the tail sawyer, and while exercising due care and caution in the performance of his duties and with his attention fixed on said defective gauge or guide, the last board of a log which had just been sawed struck plaintiff on the left leg and caused the injuries complained of; that it was the duty of the head sawyer to exercise due care and caution before starting the carriage back to see that the last board of the log being sawed was clear of the carriage; that the cause of said board's striking plaintiff and causing the injury was due to the negligence and carelessness of the head sawyer in starting back the carriage before said board had entirely cleared the carriage, causing the end of said board to be caught by the carriage block; that said carriage blocks were operated and controlled by means of springs which were used to draw the blocks back into position for the reception of another log.

The answer denied all of the material allegations in regard to the negligent operation of said mill, and put in issue the

material allegations of the complaint and set up four separate defenses:

1. That plaintiff was a man of mature age and discretion and was familiar with the work in which he was engaged, and was aware of all the dangers incident to said employment, and that any injuries received by him were the ordinary result of the ordinary risk and dangers of said employment, and were voluntarily assumed by him.

2. That the injuries received by plaintiff were the result of the negligence of the plaintiff himself, proximately contributed thereto, and not the result of any act for which the defendant was liable.

3. That the injuries received by plaintiff, except as stated in the second answer and defense, were received as the result of negligence of fellow-servants of plaintiff engaged in common employment with the plaintiff.

4. That after plaintiff had received said injuries he made a claim that this defendant was liable for such injuries, which claim was denied by the defendant, and thereupon, for the purpose of settling and adjusting the matter, said plaintiff, for a valuable consideration to him paid, did on the 24th of August, 1912, release and discharge the defendant from said claim so made. (A copy of said release is set forth in the answer.) The consideration therefor was $275 paid to the plaintiff.

The prayer of the answer is that the plaintiff take nothing in this action and that defendant recover his costs.

Plaintiff filed a reply to the averments of the answer in regard to the release set up therein, and alleges that he did not read said release before he signed it because of a severe headache with which he was suffering at that time; that said release was obtained by deception, fraud and false representations made by the defendant company, and that said release was wholly without consideration and a fraud upon the plaintiff's rights.

Upon the issues thus made the cause was tried by the court with a jury and verdict and judgment were given and en-

tered in favor of the plaintiff for $5,000 and costs of suit, amounting to $141.

A motion for a new trial was denied and the appeal is from the judgment and the order denying a new trial.

Numerous errors are assigned, because of which it is contended a new trial ought to be granted.

Apart from appellant's alleged liability because of the alleged negligence of the sawyer, the only claim of negligence was that the guide was out of repair; so that it required extra attention. The guide referred to was a mechanical contrivance used to keep the saw in place to keep it from vibrating when it passes through the log, and is raised and lowered by steam power. Its action up and down is controlled by the tail sawyer with a lever in the nature of a throttle. It is necessary to raise the guide before the last board is cut off the log.

The respondent testified that said guide worked well at times and at other times it did not, and it is contended by appellant's counsel that said guide had nothing whatever to do with the respondent's injury. Respondent testified that he had called the foreman's attention to the fact that said guide or gauge was not working properly a couple of times, and also that the guide had worked that way all the time he was tail sawyer with the exception of a day or two; that he started to work as tail sawyer six or seven weeks before he was injured; that he had told the foreman twice in the first two weeks he worked there about said guide, and whether the foreman did anything with it the last time he told him he could not say. It would work well at times and at other times it would not.

It is under this promise to repair that the respondent seeks to bring his case within the exception to the doctrine of assumed risk. The record contains no evidence showing that respondent continued to work as tail sawyer upon the alleged promise of said foreman to repair the guide; and in order to bring this case within the exception referred to, he must have alleged and proved that he continued his work as tail sawyer in reliance upon the promise of the foreman to repair

the guide. The injury was not caused by the alleged defective guide, but by a board being pushed against plaintiff's leg by some other part of the machinery.

The general rule is that where an employee has full knowledge of the unsafe condition of the premises on which he is working, he is deemed to assume the special risk incident to the employment, subject, however, to the exception that where a servant notifies the master of a special risk and objects to continuing the work under existing conditions and is induced to continue by a promise to remove the danger within a reasonable time, he does not assume the risk during such time. (*Notthoff v. Los Angeles Gas & Elec. Co.,* 161 Cal. 93, 118 Pac. 436.)

An analysis of the decisions involving the effect of a promise in such cases shows that the servant is deemed to have no cause of action unless he prove that his reliance upon such promise was the inducing motive for his consenting to subject himself to the given risk. (1 Labatt on Master & Servant, sec. 418; *Roy v. Hodge,* 74 N. H. 190, 66 Atl. 123.)

In the case at bar it was claimed, and the evidence shows, that two of the alleged promises to repair said guide were made several weeks before respondent received his injury, which, under the law, rendered them of no effect, since it is held that a promise to repair is without effect after such period of time has elapsed that it precludes a reasonable expectation that the promise will be kept. (26 Cyc. 1213.)

It appears from the evidence that the guide worked all right subsequent to the time such promises were made. When the complaint was made to the foreman, the evidence shows that he said he would have to see about it.

The true doctrine in regard to this matter relates only to the promise or assurance made by the master to the servant upon discovery of defects in tools or appliances upon the objection of the servant to use them, such as would induce him to continue in the service. It was held in *Gulf, C. & S. F. R. Co. v. Garren,* 96 Tex. 605, 97 Am. St. 939, 74 S. W. 897, that there was nothing in the nature of such a promise in the casual remark of the engineer to the defendant in error.

Under the authorities, the alleged promise to repair added nothing to respondent's rights. He had assumed the risk of an injury from the guide. The record shows that it was not the defective guide that caused the injury, but the plaintiff attempts to show that it was because he was giving his attention to the defective guide and not to his other duties that the injury occurred. The condition of the guide was relied upon by the plaintiff to relieve him of the imputation of negligence which would follow from a failure to take the boards from the carriage so that it would clear them on its return, which was the most important part of his duties. It would appear that the respondent need not have neglected his duty of watching the boards in order to see that the guide remained in its place, and his duty was to see that the boards were not where they would be taken back by the carriage on its return.

The record shows that by keeping the lever pressed back the guide would stay up, and the respondent had his left hand on the lever. He need not then have watched it in order to keep it in place. He testified that even though he had been watching the boards instead of the guide he "might or might not" have been able to see the board in time to avoid the injury. The evidence shows that the carriage ordinarily moved back and forth, shuttle fashion, at such speed that what would occur at a given second of time could not be easily distinguished. He also testified that he was not devoting his entire attention to the guide but that he had his eye on the boards.

The evidence in the record relating to the actual condition of the guide at the time the accident occurred is far from satisfactory. Respondent is not corroborated in his testimony to the effect that the guide was working imperfectly on that day, by any other witness, although three witnesses testified to its working imperfectly upon other occasions. Upon the other hand, the foreman denied that he had been asked by respondent upon that day to adjust the guide and the sawyer knew nothing of its being out of order. Respondent does not contend that the alleged defective condition of the

guide was the proximate cause of his injury, and a careful analysis of the evidence fails to show that it was necessarily even a secondary cause.

The next contention of respondent is that his injury was directly due to the negligence of the sawyer with whom he was working at the time of the accident, in that the sawyer reversed the carriage before the sawn boards were free therefrom, thereby carrying them back and allowing one of them to strike respondent's leg with great force, breaking and mangling it; that the sawyer in his control and operation of the carriage was acting as the vice-principal of the defendant corporation and performing a nondelegable duty.

It appears from the record in this case that the sawyer was a member of a band sawmill crew consisting of three other men besides himself, known respectively as the tail sawyer, setter and rider. Each of these men had well-defined duties, which were performed in concert or collaboration, and often with the aid of signals. These signals were most frequently given by the head sawyer, whose duty it was to determine the dimensions of the lumber to be sawed from a given log in order to utilize the material to the best advantage. He controlled the log carriage and was evidently the most important man on the crew, in the sense that his part required more skill and judgment than that of the others, who were therefore guided in the detail of the work to some extent by his direction. But it does not appear from the evidence in this case that he filled the position of boss or foreman in this crew. He had no power to hire or discharge workmen. There was a regular mill foreman or superintendent to whom such duties were delegated, who kept the time of the men employed about the mill and had general supervision of its operation.

There is little material conflict in the evidence as to how the injury occurred. As we have already stated, it was the duty of the tail sawyer to remove the sawn boards from the carriage before the carriage returned in order to repeat the operation of sawing another board from the log.

On the occasion of the accident, the last cut in the log had been made. For some reason the tail sawyer did not succeed in removing the board from the carriage and the carriage started to return with it. Under those circumstances it was the duty of the sawyer to reverse the carriage at once, in order to prevent injury to members of the crew on the machinery. It does not in any way appear from the testimony that he was negligent in doing this, but the fact appears to be that owing to the great speed with which the empty carriage is returned, he was not able to reverse it in time to prevent the accident. The injury might, therefore, have been occasioned by the negligence of the injured person himself; it might possibly have been occasioned by the negligence of the sawyer, or it may not have been due to actual negligence on the part of either. The record fails to supply positive and satisfying proof in this regard, which is not surprising when the great speed with which the machinery was operated is considered, so that the different acts accompanying the accident seemed to the onlookers to take place almost simultaneously. But even if it be conceded that the sawyer was actually negligent, in view of the circumstance that this question of fact was so determined by the verdict of the jury, the question of law, as to whether the sawyer under the conditions stated was a fellow-servant or vice-principal, still remains to be considered.

Respondent's counsel relies particularly upon a line of decisions in the state of Washington, holding that the head sawyer of a sawmill crew is a vice-principal, and, although he admits that the rule of decision in this class of cases is not the same in this state as it is in the state of Washington, he contends that the courts of both states agree in the proposition, as announced in the case of *Jacobsen v. Rothschild*, 62 Wash. 127, 113 Pac. 261, "that it is not the rank of the servant but the character of the act which determines the relationship of coemployees," citing *Lucey v. Stack-Gibbs Lumber Co.*, 23 Ida. 628, 131 Pac. 897, 46 L. R. A., N. S., 86. But it is apparent from the language used by the Washington court in the case of *Ongaro v. Twohy*, 57 Wash. 668, 107 Pac.

834, that it was clearly of the opinion "that the rule as to fellow-servants, as applied in that state [Idaho], differs widely from the rule as we have applied it here," and that court accordingly declined to apply the Washington rule in a personal injury case where it appeared that the injury had been sustained in the Idaho jurisdiction.

In his brief respondent's counsel quotes at length from the opinion of the Washington court in the case of *King v. Page Lumber Co.,* 66 Wash. 123, 119 Pac. 180, wherein the court said:

"A sawyer and dogger under certain conditions may be fellow-servants, but this court had repeatedly announced the rule that the sawyer, when charged with a nondelegable duty of his master, becomes and is a vice-principal." (Citing the cases referred to.)

In this case the Washington court cites with approval the case of *Dyer v. Union Iron Works,* 64 Wash. 577, 117 Pac. 387, wherein it is said: "We have held that where a master employs a number of servants to work with a dangerous agency and gives to one servant exclusive control of the agency with power to direct where the other servants shall work and the manner in which they shall work, the one given control is the representative of the master; that his negligence is the negligence of the master."

More than ten years ago, in the case of *Larsen v. Le Doux,* 11 Ida. 49, 81 Pac. 600, this court had occasion to refer to the divergence of authority in the application of the master and servant rule as exemplified in what is known as the Ohio doctrine or rule, on the one hand, and the New York doctrine on the other. In that case pains were taken to point out particularly wherein the two doctrines differed, and it was announced that in the opinion of this court the New York rule was the correct principle to apply in this class of cases; that is to say, that "the master is liable for the negligence of an employee who represents him in the discharge of his personal duties to his servants. Beyond that he is liable only for his own personal negligence." The Ohio doctrine, known also as the superior servant rule, holds that when the

master has given to an employee supervisory control and management of some particular department of his business, such person, while so acting, stands in the place of the master, and the master is accordingly liable for his negligence whereby a coemployee is injured. This is the rule followed in the state of Washington and some other jurisdictions, but it does not appear to be supported by the weight of authority.

"In most of the states the superior servant rule is either expressly or impliedly repudiated, and it is held that the fact that the person whose negligence caused the injury was a servant of a higher grade than the injured servant, or that the latter was subject to the direction or control of the former, and was engaged at the time in executing the orders of the former, does not prevent the application of the fellow-servant rule so as to make the master liable." (26 Cyc. 1309; See, also, Labatt, Master & Servant, 2d ed., sec. 1478, where the decisions of all the states on this question are elaborately summarized.)

Under the facts shown in the case at bar, it may well be doubted whether even under the Washington rule the head sawyer could be deemed a vice-principal, for this happens, to quote again the language of the Washington court, "where a master employs a number of servants to work with a dangerous agency, and gives to one servant exclusive control of the agency with power to direct where the other servants shall work and the manner in which they shall work." It does not appear from the evidence in this case that the sawyer whose negligence is alleged to have caused the injury had any such unqualified authority over his fellow-employees, or that his control over them in the performance of their joint labors was anything more than directory, subject to appeal to the mill foreman or superintendent, if any trouble or disagreement between them occurred.

After a very careful consideration of the facts in this case and the law applicable to them, we are not disposed to recede from the rule of decision adopted by this court in the case of *Larsen v. Le Doux, supra,* with regard to the distinction to be applied in cases of this kind between a fellow-

servant and a vice-principal, and are therefore obliged to conclude that the sawyer, Archie Doe, whose alleged negligence caused the injury complained of, according to the great weight of authority, as well as the previous decisions of this court, was a fellow-servant of the plaintiff, and that the defendant corporation was not therefore liable for his negligence under the facts stated.

A number of other errors are assigned involving the admission and rejection of evidence and also as to the giving and refusing to give certain instructions. However, the views announced by the court upon the questions already considered in this opinion appear to be so far decisive of the case that it seems unnecessary to pass upon the remaining assignments of error, since under our view of the law and the facts a new trial could not result in a judgment in favor of the plaintiff.

The judgment is reversed, and the cause remanded to the trial court, with instructions to enter judgment in favor of the appellant. Costs awarded to the appellant.

Budge and Morgan, JJ., concur.