ORSO *v.* GREAT LAKES ENGINEERING WORKS.

1. APPEAL AND ERROR—DIRECTING VERDICT—TRIAL.
   In reviewing a judgment on a verdict directed for defendant, the plaintiff is entitled to a consideration of the evidence in the aspect most favorable to him.

2. MASTER AND SERVANT—SAFE PLACE—WARNING AND INSTRUCTING SERVANT.
   It was a question of fact for the jury to determine whether defendant was negligent in directing plaintiff to carry heavy iron bars over a deck freshly painted, without warning him of the slippery condition of the surface, on which plaintiff slipped and was injured.[1]

3. SAME—FELLOW-SERVANTS—NONDELEGABLE DUTIES.
   Since the negligence of a superintendent or foreman of defendant in so directing plaintiff was the neglect to furnish plaintiff with a safe place, it was not the neglect of a fellow-servant, but failure to perform a nondelegable duty of the master.

4. SAME—RISKS ASSUMED.
   Under testimony that plaintiff did not know of the slippery condition of the surface and that it was not apparent, he is not chargeable with assumption of the risk.

---

[1] As to duty to warn or instruct servant, see note in 44 L. R. A. 33.

Error to Wayne; Mandell, J. Submitted January 12, 1911. ( Docket No. 3.) Decided February 1, 1911.

Case by Joseph Orso against the Great Lakes Engineering Works, for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*James R. Neill*, for appellant.

*Luman W. Goodenough*, for appellee.

Stone, J. This is an action on the case to recover damages for personal injuries received by the plaintiff while in the employ of the defendant. At the close of the testimony, the circuit judge directed a verdict for the defendant. The plaintiff has brought error. The sole question in the case is whether or not the circuit judge erred in directing a verdict.

We must consider the case in its most favorable aspect to the plaintiff under the evidence offered by him. The plaintiff is a Hungarian laboring man, not skilled in the English language, but was possessed of good health and eyesight. He was injured on May 26, 1909, while in the employ of the defendant, and while engaged in carrying two iron grate bars from a dock at Ecorse to the top deck of a steel freighter which was upwards of 400 feet in length, which had just been completed by defendant in its shipyard. These grate bars were carried to the deck for convenience of loading upon another vessel alongside. Two ladders were provided by defendant, which were placed against the hull of this boat and about 25 feet apart, which plaintiff was required to use on the day he received the injury. The top deck of the boat was constructed of steel plates, which had been painted prior to said day. For seven days previous to the date of the injury, the plaintiff had been engaged as a common laborer in various occupations about defendant's shipyard, unloading iron in the yard, and cleaning out the interior of the boat hulls.

On the day of the injury the plaintiff was ordered, with a number of other workmen, by a person called the superintendent of defendant, to carry on his shoulder iron grate bars, two at a time, which were 5 feet in length and weighing about 60 pounds apiece, up these ladders, and place them on the opposite side of the deck. The plaintiff had made about 16 trips up what is called in the record the first ladder, before he was injured. He was later ordered by the same person, who he says was called superintendent, to continue carrying these grate bars up what is called the second ladder, and to place them with the others. It appears from the record that the paint was dry and firm on that portion of the deck which the plaintiff traveled over while using the first ladder. It was necessary for the plaintiff, on reaching the top of the ladder, to step over a railing from 9 to 12 inches high in order to reach the deck. It also appears from the record that the plaintiff was the first man to go up this second ladder, and, as he stepped over the railing and upon the top deck, his foot slipped on the paint, and he was suddenly thrown to the deck, the two iron grate bars which he was carrying fell onto, and crushed the bones of, and he claims permanently injured, his left hand. The plaintiff testified that the cause of his foot slipping on the deck was due to the paint not being set or dried, its slippery condition, and that the green paint came off and on his shoes and clothes as he fell; that he did not know of the slippery and wet condition of the paint, and that it was not set or dry and that he was liable to fall; that he had no information or knowledge of the danger of slipping on fresh or soft paint when applied to steel plates, and was not warned of the care or caution to be taken when stepping onto paint that had not become hardened. The defendant gave evidence tending to show that the person who gave the orders was the foreman, and not the superintendent, and the court so held, and we think properly, as it did not contradict the evidence of the plaintiff, who simply testified to what the person was called by the men.

Upon these facts, Did the circuit judge err in directing a verdict for the defendant? We are constrained to say that, in our opinion, under the evidence contained in the record, the case should have been submitted to the jury. It was a fair question, under all the evidence, whether the deck at the point named was slippery because of the presence of green or fresh paint (the plaintiff testifying that it was), and thereby rendered unsafe and dangerous. This vessel had been finished, and the plaintiff had been directed to pass over it in his work. He was entitled to a safe place to work. If the place had been rendered unsafe by reason of its having been recently painted, and if the deck was there covered with green or fresh paint so as to make it likely that plaintiff would there fall or slip under his load, it was the duty of the defendant to warn him of the danger, especially where, as is here claimed, the appearances were deceiving. Under such circumstances, the doctrine of safe place applies. The rule that it is the duty of the master to furnish a safe place for the servant to work, is so universal, and so thoroughly settled, that no citation of authorities is necessary to sustain it. In such a case it does not matter whether the order or direction was given by the superintendent or a foreman, for it is also settled that the duty to furnish a safe place in which to work is one which cannot be delegated by the master. It is the duty of the master to make reasonable provisions to protect the servant from the dangers to which he is exposed while engaged in the discharge of his duty. This duty cannot be delegated. *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572); *Brown* v. *Gilchrist*, 80 Mich. 56 (45 N. W. 82, 20 Am. St. Rep. 496); *Morton* v. *Railroad Co.*, 81 Mich. 423 (46 N. W. 111); *Sadowski* v. *Car Co.*, 84 Mich. 100 (47 N. W. 598); *Roux* v. *Lumber Co.*, 94 Mich. 607 (54 N. W. 492); *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196–211 (61 N. W. 658, 27 L. R. A. 266); *Cristanelli* v. *Mining Co.*, 154 Mich. 423 (117 N. W. 910); *Hosking* v. *Mining Co.*, 163 Mich. 538 (128 N. W. 777).

Neither can we say, as matter of law, on this record, that the plaintiff assumed the risk.

We think that the circuit judge erred in directing a verdict, and the judgment below is reversed.

MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.