## DENNIS *v.* WILFORD.

1. MASTER AND SERVANT—PORTABLE SAWMILL—FARM HAND—CONTRIBUTORY NEGLIGENCE.

   The matter of plaintiff farm hand's contributory negligence in the loss of his hand while acting as off-bearer at portable sawmill on defendant's farm incident to sawing logs to build a barn *held,* for jury, where it was the duty of defendant through his agent, the sawmill operator, to have informed plaintiff of the danger of removing pieces of wood from the saw while it was in operation inasmuch as plaintiff informed defendant he had not worked with such a saw before commencing with defendant 2 days before the accident.

2. SAME—FARMER—NEGLIGENCE—DEFECTIVE PORTABLE SAWMILL—DANGEROUS PLACE TO WORK.

   Record presented evidence from which jury could find defendant

---

REFERENCES FOR POINTS IN HEADNOTES

[3–8] 35 Am Jur, Master and Servant § 293 *et seq.*
[9–11] 35 Am Jur, Master and Servant §§ 334 *et seq.;* § 364 *et seq.*

farmer was guilty of negligence proximately causing loss of plaintiff's hand as he removed an edging from near 48-inch saw while it was in operation, where it appears that a part of the platform of the saw had become broken so as to permit edgings to fall around the saw and necessitating removal by an attendant, a dangerous place in which to work.

3. SAME—ASSUMPTION OF RISK.

An employee assumes the ordinary dangers of his employment and the risks of defective machinery and methods known to him, or so obvious that he should have known them, but the employee need not make a minute investigation of machines and methods to ascertain the dangers, though he does owe caution and care in such respects, in an activity not subject to the workmen's compensation act.

4. SAME—ASSUMPTION OF RISK—DEFECTIVE MACHINERY, TOOLS AND APPLIANCES.

A workman in an activity not subject to the workmen's compensation act assumes the risks incident to his employment when he enters upon it, but he has the right to expect his employer to provide machinery, tools, and appliances that are reasonably safe for his use, and the employee assumes no risks growing out of their defective character unless fully advised thereof.

15. SAME—ASSUMPTION OF RISK—DEFECTIVE APPLIANCES.

An employee in an activity not subject to the workmen's compensation act who did not appreciate the danger of the work he was doing, arising from the defective appliances, did not assume the risk which resulted in his injury if the employer was not justified in supposing he understood such danger.

6. SAME—ASSUMPTION OF RISK—UNUSUAL AND EXTRAORDINARY RISK.

A servant does not assume the unusual and extraordinary risk of which the master knows or which he should know or foresee, unless such risks are obvious, or the servant has actual, or presumptive, knowledge of the danger.

7. SAME—ASSUMPTION OF RISK—OBVIOUS DANGER.

A servant does not assume the risk of danger from the failure of the master to exercise reasonable care to provide safe machinery and appliances, or a safe place in which to do his work, unless the danger is obvious, or he can acquire knowledge thereof in the exercise of ordinary care.

8. · SAME—ASSUMPTION OF RISK—PORTABLE SAWMILL—INEXPERIENCED FARM HAND.

> The doctrine of assumption of risk *held,* not to apply, where defendant farmer who engaged portable sawmill for cutting logs into lumber for a barn had the duty of providing plaintiff farm hand with a safe place to work and give him proper instructions and warnings upon being advised of plaintiff's lack of experience in such activity.

9. SAME—FELLOW SERVANTS—DELEGATION OF POWER TO DIRECT.

> Wherever the business conducted by ·the person selected by the master is such that the person selected is invested with full control over the action of the employees engaged in carrying on a particular branch of the master's business and, acting upon his own discretion, according to general instructions laid down for his guidance, it is his province to direct, and the duty of the employees to obey, then the person selected stands in the place of the master and is not a fellow servant with those whom he controls.

10. SAME—FELLOW SERVANTS—DELEGATION OF DUTY TO KEEP APPLIANCES IN REPAIR.

> A servant to whom the master delegates his duty to provide other servants with a place reasonably safe to work in and to keep machinery and appliances used in carrying on the work in reasonably good repair, cannot be held to be a fellow servant, no matter what his grade or rank, so as to relieve the master of liability.

11. SAME—PORTABLE SAWMILL—SAFE PLACE TO WORK—DELEGATION OF DUTY—NEGLIGENCE.

> Portable sawmill operator who was designated by defendant farmer to operate sawmill to cut logs into lumber for a barn had duty to direct plaintiff farmhand who assisted in such operation and defendant was bound by orders given by a negligence of the operator to plaintiff who lost his hand incident to such operation.

Appeal from Clare; Holbrook (Donald E.), J. Submitted October 7, 1953. (Docket No. 28, Calendar No. 45,928.) Decided November 27, 1953.

Case by Oliver A. Dennis against Gordon Wilford for damages for loss of hand cut off by saw.· Verdict

and judgment for plaintiff. Defendant appeals. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiff.

*Gerald J. Cotter* and *Douglas A. Dehn,* for defendant.

Sharpe, J. This is an action to recover damages for the loss of a hand while helping to operate a portable sawing machine. Plaintiff was a farmer, 36 years old, and employed by defendant on or about February 26, 1951, to work on defendant's farm. On April 14, 1951, defendant employed William Harold Wray, the owner of a sawmill, to come to his farm to cut logs into lumber, which was to be used in building a barn on defendant's farm. The saw was 48 inches across and fastened to a shaft. There was a framework over the shaft called a husk. On this husk were the shafts and pulleys. The platform covered the whole husk and kept the sawdust off the pulleys and sticks from dropping down.

A part of the platform had been broken so there was a hole 3 inches by 11 inches next to the saw. This hole permitted pieces of wood to fall down through the hole. When pieces of wood dropped through the hole it was necessary to take them out. The distance from the bottom of the saw to the ground was approximately 18 inches. During the operation of the saw a stick about 2–1/2 feet long and 3/4 inches thick became imbedded in the hole alongside the saw. The stick was below the saw. Plaintiff took hold of the stick to remove it and in doing so the saw caught the stick and pulled plaintiff's hand into the saw and cut it off.

The cause came on for trial and at the conclusion of plaintiff's proof, defendant made a motion for a directed verdict on the theory that plaintiff's negli-

gence was the proximate cause of his injury, and plaintiff's failure to prove negligence on the part of defendant. The trial court denied the motion. The trial proceeded, and at the close of all evidence the following occurred:

"*Mr. Cotter:* May it please the court at this time I would like to renew the motion for a directed verdict. First that there is no negligence proven so far as the defendant is concerned; second, that the plaintiff here assumed the risk of his employment; and third, that the negligence of a fellow employee, if there was any negligence, was the negligence and the risk of that negligence is assumed by the plaintiff; fourth, that the plaintiff is guilty of contributory negligence in the manner in which he attempted to remove this slab. The danger was obvious and apparent and was such that an ordinary prudent man would not attempt what was attempted here under the same or similar circumstances and thus was contributorily negligent. If there was any negligence as far as the operation of the mill was concerned the operation was under the direction of a fellow employee and also that if the plaintiff, as he now claims, saw and he should have seen this claimed opening or hole in the platform, he assumed by continuing to operate and work there that risk, so we move at this time for a directed verdict.

"*By the Court:* I believe the court will reserve its decision under the Empson act.* Have the jury return, please."

The jury returned a verdict in favor of plaintiff in the amount of $3,750. A judgment was entered upon the verdict. Following the entry of judgment, defendant made a motion for a new trial for reasons stated above. The trial court denied defendant's motion for a new trial. Defendant appeals and urges that the court should have directed a verdict for

---

* CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1951 Cum Supp § 27.1461 *et seq.*).—REPORTER.

defendant for the reason that plaintiff was guilty of contributory negligence. Plaintiff testified:

"I didn't know anything about a saw. I never worked in a sawmill. I told him that and he said Mr. Wray would tell me what to do. There was no sawmill set up there at the time, but there was afterwards. It was Harold Wray's mill. I started working on the job there for the cutting of the lumber. There was Mr. Wilford, Mr. Wray, and myself, the 3 of us. Mr. Wray run the saw. Mr. Wray told me I was to keep the boards away, the slabs and stuff away from the saw as it was sawed off. I have never worked on sawmills prior to that time. I started operation I presume on the 14th, it happened on the 16th. I had operated 2 days before the accident. Mr. Wray was the one operating the carriage and I was taking the slabs and the boards away as they was sawed. I did that at the direction of Mr. Wray. * * * Mr. Wray told me to take the stuff away from the saw there, take it out. I did it by, well, sometimes pieces would stick up above the saw shaft so I could take hold of them and lift it out from the top, and other times they were shorter and you couldn't reach them from the top. Then I went around to the other side of the saw so I could take it out from my underneath side. There was approximately 18 inches between the saw and the ground. I had gone in there and taken them out that way before. Mr. Wray was right there when I was doing it.

"I had an accident on the afternoon of the 16th. Just before this accident there was another piece that fell in this hole and you couldn't proceed with the sawing until it was removed, so I proceeded to take it out. I went around, it was a short piece so I had to go around to the other side of the saw and take it out underneath. The piece was standing up again the saw and I reached underneath to remove it and when I did the saw caught the stick and pulled my hand into the saw and cut it off. I had taken sticks out of there before like that. There was a

space of about 18 inches between the ground. At the time I got hurt I don't know whether the stick came out or not."

William Harold Wray, the owner of the sawmill, and a witness for defendant, testified:

"That hole was dangerous on that certain slab. It was dangerous to have a hole in there to let things go down through. If they went down through they had to be taken out. * * *

"Mr. Wilford never gave me any authority to give Mr. Dennis any orders. I didn't give any orders. I might have showed him how to take the boards and slabs away from the saw as off-bearer. I never showed him at any time about cleaning out the edgings under the saw."

The trial court gave the following instructions to the jury:

"In passing upon the question of contributory negligence it is your duty to take into consideration the experience of the plaintiff in connection with the sawmill, as shown by the evidence; the fact, if you find it to be a fact, that the plaintiff has been a farm-hand and worked at that principally; his experience or inexperience in connection with the operation of a sawmill, and all the other facts in evidence bearing upon the question of contributory negligence. Now, I stated that the plaintiff in this case was bound to use ordinary care. In passing upon this question you will consider the distance between the saw and the ground, the fact that he had been between the saw and the ground, the fact that he had been removing such debris, slabs and pieces of board prior to the injury, if you so find the same to be true, and also the fact, if you find it to be a fact, that he had been instructed by his master, that is the defendant in this case, that he should take his orders from Mr. Wray, who would be in charge of the sawmill, if you find the same to be the fact; his experience or

lack of experience and the length of time he worked upon this job and all the facts surrounding the case."

In the case at bar there is evidence that plaintiff told defendant that he knew nothing about a saw-mill and was told by defendant, "Mr. Wray would tell me what to do;" that if pieces of edgings fell into the hole the proper thing to do is to stop the saw and take them out, although an experienced man could reach under and take them out, but if you grabbed the edging solid it would jerk the hand into the saw.

In the case at bar it was the duty of defendant through his agent, William Harold Wray, to have informed plaintiff of the danger of removing pieces of wood from the saw while it was in operation. In our opinion plaintiff's contributing negligence, if any, was a factual question and properly submitted to the jury.

Defendant also urges that if he was guilty of negligence his negligence was not the proximate cause of plaintiff's injury. There was evidence from which a jury could find that defendant told plaintiff that Wray would tell him what to do, and that the hole in the platform created a dangerous place to work. Cecil Matthews testified:

"To have a hole there is very dangerous even for a sawyer or anyone working around the mill. Those edges by dropping down through could catch in the saw and they would be thrown back and could wedge up anywhere in the saw. The edgings could catch on the saw and be thrown at somebody. It could break the saw or break the teeth. If that platform was kept where it should have been, nothing could get through there. Nothing could get through there, nothing could happen as far as that is concerned. It wasn't proper practice to have that hole there. It was dangerous.

"If pieces of edgings fall down in there you either have to stop the mill to take them out, that would have to be removed, or take chances to get those out, somebody is liable to be hurt. An experienced man could probably reach in there while the saw was running and get it out, which has been done, if he didn't grab hold of it too solid and keep his hand far enough from the saw. If he didn't grab too solid, if it would grab the saw it would jerk out of his hand, wouldn't jerk the hand into the saw. If you grabbed it solid it would jerk the hand into the saw. It could be removed as it stood there some 18 inches the ground being some 18 inches below the saw, standing up, if you was careful. If you was careful you could hold back from the saw and take it out, which has been done. A man who has worked around saws for years would know what danger was there, he would keep his hand away from it and move the slab away instead of pulling it through in under the saw. If a man reached through under the saw it naturally is going to catch on the saw, or pull it against it. This platform is supposed to be solid up within a half or quarter of an inch from the saw to prevent stuff from falling in between the saw and the platform."

In our opinion there was evidence from which a jury could find that defendant was guilty of negligence, and that such negligence was the proximate cause of plaintiff's injury.

Defendant also urges that the trial court was in error in failing to direct a verdict for defendant on the ground that plaintiff assumed the risk of his employment. Defendant relies upon *Lamotte* v. *Boyce,* 105 Mich 545, 548, where we said:

"There is no obligation upon the part of employers to make their premises and machinery perfectly safe, or to have the most approved appliances. The duty of the employer to provide reasonably safe machinery is qualified by his right to contract for

the use of machinery which falls short of the best and most approved; and when the defect is obvious, and cannot escape ordinarily careful observation, which is always due from the employee, the risks attendant upon such use are assumed by the latter. In places like sawmills, appliances more or less crude may reasonably be expected, and those who use them are ordinarily as good judges of their safety as the master. If unsafe, and the employee still consents to use them, the risk is his; and the master has a right to expect that he assumes it, where the nature of the appliance, and its dangers, are obvious. *Batterson* v. *Chicago & Grand Trunk R. Co.*, 53 Mich 125, 129; *Ragon* v. *Toledo, Ann Arbor & N. M. R. Co.*, 97 Mich 265, 274."

In *Delbusso* v. *American Cement Plaster Co.*, 165 Mich 318, 323, we said:

"It is a well-settled rule, and nowhere better settled than in Michigan, that an employee assumes the ordinary dangers of his employment and the risks of defective machinery and methods known to him, or so obvious that he should have known them. It is not, however, the law that the employee must make a minute investigation of machines and methods to ascertain, though he does owe caution and care in these respects."

We also quoted with approval from 1 Labatt on Master and Servant, § 271, where it was said:

" 'The general rule that a workman assumes the risks incident to his employment when he enters upon it, is well settled, but its application is subject to certain qualifications. He certainly has the right to expect his employer to provide machinery, tools, and appliances that are reasonably safe for his use, and he assumes no risks growing out of their defective character, unless he has been fully advised that they are defective and dangerous. He has the right to suppose that his employer has provided such guards and means of protection from injury, in the

use of the machinery, tools, and appliances as are usual and reasonably necessary for his safety; and he cannot be held to assume the risks attendant on their absence, unless such absence is apparent, or his attention has been called to it. *Rummel* v. *Dilworth, Porter & Co.*, 131 Pa 509 (19 A 345, 17 Am St Rep 827). * * * If the plaintiff did not appreciate the danger of the work he was doing, arising from the defective appliances, and if the defendants were not justified in supposing he understood it, it can not be held that, in the contractual relation of master and servant, he assumed the risk which resulted in his injury. *Demars* v. *Glen Manfg. Co.* (1892), 67 NH 404 (40 A 902). A servant does not assume the unusual and extraordinary risk of which the master knows or which he should know or foresee, unless such risks are obvious, or the servant has actual, or presumptive knowledge of the danger. *Reed* v. *Stockmeyer* (1896), 20 CCA 381 (74 Fed 186, 34 US App 727). A servant does not assume the danger from the failure of the master to exercise reasonable care to provide safe machinery and appliances, or a safe place in which to do his work, unless the danger is obvious, or he can acquire knowledge thereof in the exercise of ordinary care.' *Comben* v. *Belleville Stone Co.* (1896), 59 NJL 226 (36 A 473)."

See, also, *LaPointe* v. *Chevrette,* 264 Mich 482.

Under the circumstances of this case the doctrine of assumption of risk does not apply, as it was the duty of defendant to provide plaintiff with a reasonably safe place to work. It was also defendant's duty to give proper instructions and warnings to plaintiff.

It is also urged that the trial court should have directed a verdict against plaintiff on the theory that if there was any negligence it was the negligence of a fellow employee.

In *Hunn v. Michigan Central R. Co.*, 78 Mich 513, 519 (7 LRA 500), we said:

"Whenever the business conducted by the person selected by the master is such that the person selected is invested with full control (subject to no one's supervision except the master's) over the action of the employees engaged in carrying on a particular branch of the master's business, and, acting upon his own discretion, according to general instructions laid down for his guidance, it is his province to direct, and the duty of the employees to obey, then he stands in the place of the master, and is not a fellow-servant with those whom he controls."

In *Maki v. Isle Royale Copper Co.*, 180 Mich 624, 632, we said:

"The rule that it is the duty of the master to provide his servant a place reasonably safe to work in, and that it is his duty to keep the machinery and appliances used in carrying on the work in reasonably good repair, is firmly established in this State.

"Likewise that when the master delegates this duty to a servant, no matter what his grade or rank, the servant cannot be held to be a fellow-servant to relieve the master of liability. Jack Glanville's duty to see that the chain was safe and properly adjusted was the duty of the master, and in doing so he acted for the master. In this he was the defendant's agent and vice principal and not the plaintiff's fellow-servant. *McDonald v. Michigan Central R. Co.*, 132 Mich 372 (102 Am St Rep 426); *Orso v. Great Lakes Engineering Works*, 164 Mich 568, 571, and cases cited."

The trial court was not in error in failing to direct a verdict in favor of defendant. The record shows that William Harold Wray was designated by defendant to operate the sawmill. It was Wray's duty to direct plaintiff in the services that plaintiff was to perform. Wray was the agent of defendant, and

defendant is bound by the orders given by Wray to plaintiff.

The judgment is affirmed, with costs.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.